STATE v. CAMPBELL *ET AL.*

(142 S. E., 31)

1. HOMICIDE—EVIDENCE HELD INSUFFICIENT TO SUSTAIN CONVICTION FOR MANSLAUGHTER AS TO TWO DEFENDANTS.—In prosecution for murder, evidence *held* insufficient as to two defendants to sustain conviction for manslaughter.

2. CRIMINAL LAW—REFUSAL OF NEW TRIAL FOR PERMITTING DEPUTY
SHERIFF, NOT SWORN AS BAILIFF, TO CONVERSE WITH JURY AFTER
RETIREMENT, HELD ERROR.—Where, after jury in murder prosecu-
tion had retired, Deputy Sheriff, not sworn as bailiff, and interested
in prosecution as being one of bondsmen for person whom defend-
ants claimed had committed homicide, accompanied bailiffs in
charge of jury to restaurant, and was permitted to converse with
them, trial Court erred in failing to grant a new trial.

Before FEATHERSTONE, J., Spartanburg, April, 1926.  Re-
versed as to the last two named defendants, and a new trial
as to the defendant first named.

Ed Campbell, Pinckney Campbell, and Carlisle Campbell
were convicted of manslaughter, and they appeal.

Exception 23, subd. (c), referred to in the opinion, is as
follows:

(23) Because the presiding Judge erred in overruling the
motion of defendants' attorneys for a new trial on the follow-
ing grounds:

　　　　*　　　*　　　*　　　*　　　*　　　*　　　*

(c) That, after the jury had been given the indictment,
they were taken out of the courthouse, out of the jury room,
as shown by affidavits read to the Court, to Mr. Burnett's
Restaurant on East Main Street, and the two bailiffs who
were sworn in to have charge of the jury while they were
in their deliberation were sworn in for that purpose, were
accompanied there by J. W. Becknell, the deputy sheriff, who
sat at the table, as shown by the affidavits submitted, con-
versed with the jury, and who (J. W. Becknell), it develops,
was one of the bondsmen for Simpson Taylor, whom the de-
fendants charged with the homicide; the error being that
the bailiffs, who were sworn to keep the jury from con-
versing with any one, permitted the bondsman of the man
the defendants charged with the homicide to sit at the table
with the jury and converse with them, J. W. Becknell not
being sworn as one of the bailiffs and the deceased being a
brother officer of Deputy Sheriff J. W. Becknell, the deceased
being a state constable at the time of his death.

*Messrs. Nicholls, Wyche & Byrnes,* and *L. G. Southard,* for appellants, cite: *No conspiracy:* 133 S. E., 457. *Mere presence of a party at the commission of a crime will not render him liable as an aider and abettor:* 77 S. C., 119; 16 C. J., 121, 122. *Impeachment of witnesses:* 65 S. C., 246; Sec. 474, Wharton's Crim. Ev.; 19 Mich., 170; 16 Mich., 40. *Evidence of the character and habits of the party slain is proper in so far as they can be supposed to have affected the intention of the slayer:* 12 Rich., 443; 29 S. C., 42. *Where persons other than jurors are allowed to mingle with the jurors while they are deliberating on their verdict, same should be set aside:* 32 S. C., 403.

*Solicitor I. C. Blackwood* and *D. W. Smoak,* for respondent.

March 13, 1928.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

The statement of the case is: The defendant, Ed Campbell, was, at a term of Court of General Sessions, held in June, 1925, indicted along with Simpson Taylor, William Staton, and Boyce Henson, charged with the murder of David Williams, a state constable for Spartanburg County. This indictment was nol prossed by the Solicitor, and at a term of Court, held the fourth Monday of July, 1925, an indictment was handed to the grand jury charging the defendants Ed Campbell, Carlisle Campbell, and Pinckney Campbell with the murder of David Williams, above mentioned.

The case came on for trial at the April, 1926, term of Court for Spartanburg County, before Hon. C. C. Featherstone, presiding Judge, and a jury. The defendants pleaded "not guilty." At the conclusion of the testimony for the State, the defendants moved for a directed verdict of not guilty on the grounds set out in the record, which was over-

ruled by the presiding Judge. A similar motion was made at the conclusion of the entire testimony, and again overruled by the presiding Judge. The jury found the defendants guilty of manslaughter, and the defendant Ed Campbell was sentenced by the presiding Judge to serve not less than five years nor more than ten years; defendant Pinckney Campbell was sentenced to serve not less than three years nor more than six years; and defendant Carlisle Campbell was sentenced to serve not less than two years nor more than four years.

Before the defendants were sentenced, attorneys for defendants made a motion for a new trial upon the grounds set out in the record, which was overruled by the persiding Judge.

It appears from the testimony that the defendants Ed Campbell, William Staton, Simpson Taylor, and Boyce Henson, the parties first indicted, were drinking whisky in some woods on the lands of Ed Campbell, Sr., the father of the defendant Ed Campbell, some several hundred yards distance from the house where the deceased, David Williams, resided. A difficulty arose between Simpson Taylor and Ed Campbell, who shot at each other several times, Simpson Taylor retreating toward the house where the deceased, David Williams, was sitting on the front porch; the theory of the defendants being that Taylor, when coming into close range of the house, fired the shot that killed the deceased, the theory of the State being that defendant, Ed Campbell, while firing at Simpson Taylor, fired the shot that killed the deceased, David Williams, and that Ed Campbell was aided and abetted in his attack upon Simpson Taylor by the defendants Carlisle Campbell and Pinckney Campbell.

Carlisle Campbell and Pinckney Campbell were not present when the difficulty started between Ed Campbell and Simpson Taylor, and only came upon the scene after Simpson Taylor had retreated down the road; the theory of the

defendants being that neither Carlisle Campbell nor Pinckney Campbell aided, assisted, encouraged, or advised the alleged act of the defendant Ed Campbell, nor did they participate in any homicidal.design or intent, if any, on the part of Ed Campbell, nor was there any consent or concurrence on the part of Carlisle Campbell or Pinckney Campbell, nor was there anything done on the part of Pinckney or Carlisle Campbell, in pursuance of a common purpose, and that, at the time the fatal shot was fired, if fired by the defendant Ed Campbell, neither Carlisle Campbell nor Pinckney Campbell was present.

Exceptions 1, 2, 3, 4, 5, 6 and 7 allege error in not directing a verdict as to Pinckney and Carlisle Campbell.

A careful reading of the evidence fails to show that either of these defendants were present when the deceased was killed. It was a sudden row between the parties who were drinking, and Ed Campbell and Taylor shot at each other, and the shots fired by Taylor and Campbell resulted. in the death of Williams.

The evidence on the part of the State fails to connect these two defendants as being present when Williams was killed or that they aided, assisted, encouraged, or advised the act of the defendant Ed Campbell, or that there was any conspiracy or common purpose or consent or concurrence on the part of these two defendants.

The evidence shows that Pinckney Campbell came out of the house with a shotgun and went into the woods. The testimony of every witness for the State was that no gun was fired. There was a total lack of evidence on the part of the State to show that Pinckney Campbell, after entering the woods, was ever in sight of either Ed Campbell or Carlisle Campbell until after Ed Campbell fired. The witness Staton testified that, within two or three minutes after Pinckney went towards the woods, pistols fired. The defendant Pinckney Campbell testified, and was corroborated

by Carlisle Campbell, that he did not get closer to Carlisle Campbell and to Ed Campbell than the length of the court-room, approximately 75 feet; that no words were passed between them. The testimony of Ed Campbell was that, at the time he fired at Taylor, he did not know that either Carlisle or Pinckney was present, and not until he turned from looking in the direction of Taylor did he see Pinckney Campbell.

In the case of the *State v. Lowman,* 134 S. C., 485; 133 S. E., 457, this Court said:

"It is manifest, from the nature of the case, that, if the judgments against the defendants are to stand, there must have been a conspiracy on the part of the defendants to attack the officers. It is not the province of this Court to discuss the testimony, but from the nature of the testimony it will not be amiss to say that a conspiracy could not have been formed by all of the defendants to attack the officers after the officers arrived upon the premises, and the testimony given by the witnesses does not disclose that a conspiracy existed before the visit of the officers."

As in the *Lowman case,* there is no testimony in this case to show that a conspiracy existed between Pinckney Campbell and Ed Campbell or Carlisle Campbell before Ed Campbell fired at Simpson Taylor. The record shows that, when Taylor fired his pistol, Pinckney Campbell was at work upon the farm near the house, and no witness testified that Pinckney spoke to Ed Campbell on the day of the homicide prior to the time that Ed Campbell fired. As in the *Lowman case,* the testimony clearly shows that a conspiracy could not have been formed by Pinckney Campbell and his two brothers after Pinckney went to the scene, as there was no testimony that he ever spoke to either of the other defendants, or that they spoke to him, or that Ed Campbell knew they were present until after he fired.

There was no testimony that Pinckney Campbell was present at the spot where Ed Campbell was when he fired, the only testimony being his testimony and that of his brother Carlisle that he was as distant as the length of the courthouse, and the testimony of Ed Campbell that, when he turned after firing, he saw Pinckney Campbell about 15 steps away. Even if this be held to constitute sufficient testimony showing presence, mere presence at the commission of an offense is not sufficient to justify a conviction.

In the case of the *State v. Hunter,* 77 S. C., p. 119; 57 S. E., 637, this Court said:

"If the charge conveyed to the jury this meaning it was erroneous, for the mere presence at the commission of a crime, with the intention to aid, but without preconcert and without the knowledge of the person engaged in the crime, does not ordinarily of itself constitute such participation."

"In the absence of preconcert, or at least of intent to aid and acknowledge thereof on the part of the actual perpetrator of a crime, the mere presence of a person at the time and place of the crime does not make him a principal in the second degree, where he does not aid or abet, although he makes no effort to prevent the crime, and even though he may mentally approve it, unless he is under legal duty to prevent it." 16 C. J., § 121.

"The mere fact that a person present at the commission of a felony intended to assist the perpetrator of the felony in its commission, if necessary, will not render him liable as an aider and abettor. On the other hand, the mere intention to assist, should it become necessary, if there is preconcert between the accused and the perpetrator, or if the latter has knowledge of such presence and intent, will constitute an aiding and abetting." 16 C. J., § 122.

What has been said as to Pinckney Campbell applies with equal force to the alleged error on the part of the Circuit Judge to direct a verdict of not guilty as to Carlisle Camp-

bell. There is testimony that Carlisle followed Ed into the woods, but that, when Ed fired at Taylor, he did not know that Carlisle was near; that, when he turned after firing, he saw Carlisle just a short distance away. There is no testimony that Carlisle had a pistol, except the testimony of Staton, who testified that the day after the homicide he told Sheriff Miller and Constable Henry what he knew about the case, and did not state that Carlisle Campbell had a pistol, but at the trial, after the indictment against him had been nol prossed, testified that Carlisle Campbell had a large pistol, and, after the firing said, "That last shot with the .38 is what got him." He further testified that Ed Campbell asked Carlisle, "Did you shoot in the direction of the Williams' home?" and that he heard no reply from Carlisle. Admitting for the purpose of this argument the truth of this testimony, the fact that he had a pistol is no evidence that he fired it. And the testimony of the eyewitnesses for the State was that shots were fired only by Taylor and Ed Campbell. Carlisle Campbell testified that the last shot with the .38 killed Williams, and that he saw Taylor fire it. The question Ed is alleged to have asked Carlisle Campbell only indicates that he did not know that Carlisle fired a shot, and Staton declared he could not hear the reply.

As to subdivision (c) of Exception 23, it must be sustained.

The record shows that, after the presiding Judge had delivered his charge to the jury, the jury retired to their room for a few minutes, and then were taken to a restaurant on the Main Street in the City of Spartanburg; the jury being in the custody of Deputy Sheriff Becknell, who was seated at the table with several of the jurors while they had supper. The record further shows that Becknell was the man who went on the bond of Simpson Taylor, who, according to the theory of the defense, killed the deceased, David Williams. After Becknell went upon the

bond of Taylor, the record shows that Becknell had a confer-ence with the solicitor, and later the indictment against Taylor was nol prossed, and an indictment found against the defendants. The record also shows that Becknell there-after accompanied the solicitor to the scene to have photo-graphs taken of the surroundings. In the case of the *State v. Senn,* 32 S. C., 403; 11 S. E., 298, Mr. Justice McIver, delivering the opinion of this Court, said:

"It seems to me, also, that the fact that persons other than members of the jury were permitted to mingle with the jurors while they were deliberating on their verdict, requires that this verdict should be set aside. While I subscribe fully to the doctrine that the Court will not listen to affidavits tending to impeach the verdict of a jury by showing what passed between the jurors while deliberating on their verdict, or the motives or reasons which may have induced some or all the jurors to reach the conclusion evidenced by the verdict as announced; yet it seems to me that where it is made to appear that the jury, after retiring to their room, have been exposed to outside influences, the Court should, without in-quiring whether such influences have been exerted, set aside the verdict. The privacy of the jury room has always been regarded as sacred, and the law contemplates that all proper precautions should, as far as practicable, be taken to preserve the jury even from the chance of being operated upon by out-side influences, and where it appears, as it does in this case, that the jury have been exposed to outside influences, I think it is sufficient ground to set aside the verdict."

Taylor was engaged in the shooting in which Williams was killed. He had been indicted for murder by a true bill found later. The solicitor nol prossed his case. Becknell was on Taylor's bond.

He had no authority to be present with the jurors and bailiffs in charge of the jury. Both he and the bailiffs in charge of the jury were in contempt of Court, and the

bailiffs disregarded the oath administered by them when they took charge of the jury, and the rule laid down in the *Senn case* should be followed that:

"While it is made to appear that the jury, after retiring to their room, have been exposed to outside influences, the Court should, without inquiring whether such influences have been exerted, set aside the verdict."

Chief Justice Moses in *State v. McQuaige,* 5 S. C., 432, has this to say as to preparing a jury box:

"But the objection that the Court refused to sustain the challenge to the array must prevail. The obligation resting on one engaged in drawing a jury involves a duty of such a high, important and delicate character, that its exercise must be free even from a suspicion of partiality. It is true that no charge of wrong is imputed to the commissioner. Courts must be governed by general principles. It is better for the communty that a definite and established rule should prevail, not affected by any condition or provision, to be applied by any inquiry as to intention or motive, the ascertainment of which is almost impossible, save through the oath of the party whose act may be the subject of challenge and examination.

"It would be but a loss of time, which, under the pressure of business before us, we could not afford, to refer to the many authorities which may be found, sustaining a challenge to the array, if the officer making the return is a blood relation of either of the parties, or in a position, in regard to the deceased, which must necessarily subject him to a feeling, at least, of prejudice against one charged with his murder. It is sufficient to refer to the words of Blackstone, at the 365th page of his third volume. No Judge who ever adorned the English bench more justly prized the value of the trial by jury than did this eminent jurist and commentator. In extolling 'the constitution and frame of the tribunal, which the law of England has provided for the test and investigation

of truth,' he includes, among its 'remarkable' incidents, 'its caution against all partiality and bias, by quashing the whole panel or array, if the officer returning is suspected to be otherwise than indifferent.' A principle, whose foundation rests upon natural justice, and whose effects, in its practical results, can never conduce to wrong—a rule so long recog- as one of the safeguards of jury trial—must not be aban- doned without reason, and, least of all, must it be shorn of any of its efficacy, when applied to a case involving human life.

"It is urged that the objection 'is not well taken, because the deceased cannot be said to be directly or indirectly a party to the action.' A wise and humane provision of the law can- not be controlled by so narrow and contracted a limitation. If there ever is an occasion for its enforcement, it is when the officer stands in near relationship to the deceased. All the reasons which recommend it, as between parties to the record, in a civil cause, apply with greater force where the impulses of nature restrain the free exercise of impartiality. The books, too, make no distinction, and if the sheriff, or other officer officiating in drawing a jury, is a blood re- lation to the deceased, it is ground of challenge to the array."

His Honor is reversed in not directing a verdict as to Pinckney and Carlisle Campbell. The exceptions as to ruling on the testimony are not passed upon. Ed Campbell is granted a new trial upon Exception 23 subd. (c).

Reversed as to Pinckney and Carlisle Campbell, and a new trial as to Ed Campbell.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CAR- TER concur.