## STATE v. BROCK.

1. CRIMINAL LAW—MISDEMEANOR—ASSIGNMENT—WAIVER.—A defendant charged with misdemeanor has no right to demand an arraignment; but if he had such right, he waives it by participating in the trial in the usual way without objection.

2. JURORS—RELATIONSHIP.—There is no statute fixing the degree of relationship to parties litigant which will disqualify a juror; but whether a juror is indifferent, is left to the trial Judge; but the rule stated here that a juror related to either party by blood or affinity within the sixth degree is disqualified, is salutary, although not prescribed by law.

3. CRIMINAL LAW—LIBEL.—In prosecutions for libel, is the truth of the alleged libel a complete defense?

Before TOWNSEND, J., Clarendon, February, 1900. Reversed.

Indictment against John P. Brock for libel. From sentence on verdict of guilty, defendant appeals.

*Mr. Joseph F. Rhame,* for appellant, cites: *The constitutional provisions as to libel are:* 1868, art. I., sec. 8; 1895, art. I., sec. 21. *As to its construction:* Cool. on Con. Lim., 55-57; 1 Story on Con., sec. 400; 3 Green. Ev., sec. 177; 12 Wheat., 332; 16 S. C., 47; 59 S. C., 571. *State must show falsity of defamatory words:* 59 Ark., 431. *Truth of libellous words is complete defense:* 122 Ind., 42.

*Messrs. Lee & Moise,* for appellant, cite: *As to standing aside jurors by Court:* 7 Rich., 412; 34 S. C., 33; Rev. Stat., 2296, 2403; Crim. Code, 54; 20 Ency., 737; 47 N. J. Eq., 39. *Defendant should have been arraigned:* Con. 1895, art. I., sec. 25; 4 Ency., 761, and note; 51 Mo., 74. *The truth of the alleged libel is a complete defense:* 2 Brev., 448; 1 McC., 531; Con. 1868, art. I., sec. 8; Con. 1895, art. I., sec. 21; 56 S. C., 529; 21 L. R. A., 502; 122 Ind., 42; N. C. Crim. Code, 1883, sec. 1195; Ver. Rev. Laws, 1880, sec. 1446; Ga. Code, 1895, 3839, 2979; Md. Gen. Public Laws, p. 1096. *In those States where provision is similar to Constitution of 1868, the rule is contra:* Me. Rev. Stat., 1840, c. 165, sec. 5; 1871, c. 129, sec. 4; 9 N. H., 34; 3 Whar. Crim. Law, secs. 2583, 2585, 2586, 2588, 2591, 2587; 9 Irish L. Rep., 274; 12 *Id.,* 23.

*Solicitor John S. Wilson* and *W. C. Davis,* contra, cite: *Whether juror is indifferent, is for Judge:* 12 Ency., 359, 360; Rev. Stat., 2403, 2296; 31 S. C., 238; 54 S. C., 151. *Motion in arrest of judgment not proper way to raise right to arraignment:* 27 S. C., 34; 4 Minor Inst., p. 848. *Is the truth of the alleged libel a complete defense?* Adger's Libel and Slander, 2 ed., 330; 2 Brev., 440; Con. 1868, art. I., sec. 8; Con. 1895, art. I., sec. 21; Dud., 303; 27 S. C., 38; Desty Am. Cr. L., 140; 13 Ency., 494-5, 489, 502; Cheves, 195; 1 Rich., 187; 16 S. C., 440.

July 13, 1901.  The opinion of the Court was delivered by

MR. JUSTICE POPE.  Under an indictment for libel, the defendant, John P. Brock, was tried at the February, 1900, term of Court of General Sessions for Clarendon County. A verdict of guilty was rendered.  After sentence, the defendant appealed upon several grounds.  We will now pass upon these grounds in their logical order.

First. The appellant in his second ground of appeal alleges error as follows: "Second. Because his Honor erred, it is

respectfully submitted, in overruling the defendant's motion in arrest of judgment and to set aside the verdict, made upon the ground that the indictment had never been read to the defendant, nor had he ever been given the opportunity to plead to the same, and that no plea to the same had ever been made or entered and no issue ever joined thereon; and in holding that a plea to the indictment was not essential or necessary, and that the trial and conviction of the defendant in the absence of any plea to the indictment was legal and valid." In the agreed case for appeal, the following statement is made: "At no time was the indictment ever read to the defendant, nor was he ever called upon to plead or given the opportunity of pleading to the same; nor was any plea to the indictment ever made by the defendant or entered; and the entire trial was had without any plea to said indictment." And by the same agreed case for appeal this language explains when and how this matter was brought to the attention of the Circuit Judge for the first time: "The jury returned a verdict of guilty. The Judge then asked the defendant if he had anything to say why sentence should not be passed upon him, thereupon the defendant submitted a motion in arrest of judgment, and to set the verdict aside on the ground that the indictment had never been read to him; that he had never been called upon to plead to the same, nor given the opportunity of doing so; that no plea had ever been made or entered; that no issue had ever been joined between the State and the prisoner, and that hence his trial and conviction were both illegal and void, and could not support a judgment. After argument, the Court held: that the defendant being charged with a misdemeanor and not with a felony, a plea to the indictment was not essential; that it was not legally necessary that the indictment should be read to the defendant, nor that he should be called upon to plead to the same, nor afforded the opportunity of doing so; and that his trial and conviction in the absence of any plea to the indictment at all was legal and valid, and he overruled the motion and the defendant

excepted.   The sentence of the Court was $50 or one day's
imprisonment."   Thus the appellant brings squarely before
this Court the right of a defendant when indicted for a mis-
demeanor on his trial therefor to be regularly arraigned and
to be required to plead to said indictment.   The case for
appeal shows that the defendant was personally present at
his trial, and also that he was represented by Joseph F.
Rhame, Esq., and Messrs. Lee & Moise, attorneys, as his
counsel.   That the counsel for the defendant cross-exam-
ined every witness for the State, and introduced a number of
witnesses for the defense, including the defendant himself.
Not only so, but that repeated requests were made in writing
upon which the Circuit Judge was asked to charge the jury.
We find in sec. 47 of the Criminal Statutes of this State,
that "no person shall be held to answer in any Court for an
alleged crime or offense unless upon indictment by a grand
jury, except * * *" which provision is meant to carry into
effect sec. 17, of art. I., of our present Constitution.   Sec.
54 (formerly 2641 of the General Statutes) requires that
in the *arraignment* of persons indicted for "murder, man-
slaughter, burglary, arson, rape, grand larceny or forgery,
shall be entitled to * * *," but "that any person or per-
sons who shall be indicted for any crime or offense other
than those enumerated above, shall have the right to * * *"
Thus by indirection the Criminal Statutes of our State re-
quire *arraignment* for certain offenses, such as murder, man-
slaughter, burglary, arson, rape, grand larceny or forgery,
but do not require *arraignment* for any other offenses.
What is an arraignment?   The definition given in 2 Ency-
clopaedia (Am. & Eng.) of Law, 829, is: "Arraignment is
the calling of the prisoner to the bar of the Court to answer
to the matter charged against him."   Lord Hale says in his
2 Pleas of the Crown, p. 216: "An arraignment consists of
three things.   *First,* the calling of the prisoner to the bar
by his name and commanding him to hold up his right hand,
which, though it may seem a trifling circumstance, yet it is
of importance, for by holding up his hand, *constat de per-*

*sone indictati,* and he owns himself of that name; *second,* reading the indictment to him in English that he may understand his charge; *third,* demanding of him whether he be guilty or not guilty." So, therefore, when the appellant speaks in this ground of appeal of not having had the indictment read to him, he refers to the failure of the Court to have him *arraigned.* In what cases must an arraignment be had? In the 2 vol. of Encyclopaedia of Pleading and Practice, at p. 761, it is stated: "In a trial for a felony, and especially if capital, the arraignment has always been regarded as an essential," citing in notes a number of authorities in support of the proposition, amongst others, the case of *The State* v. *Moore,* 30 S. C., 69. Arraignment is necessary in felonies, but as to misdemeanors, the work, Ency. Pleading and Practice, at page 762, states: "The authorities are divided as to whether an arraignment is necessary in cases of misdemeanor?" Fortunately, in our own State, in the case of *The State* v. *Moore, supra,* it is held that an arraignment is not necessary in misdemeanors, thus furnishing an adjudication of the question. But, as we understand, in the practice in our State from the earliest times, an arraignment was not necessary in *misdemeanors.* Defendants charged with misdemeanors may be tried in their absence, and this cannot be done in case of *felonies.* If a defendant charged with a misdemeanor can be legally tried in his absence, what would be the necessity of an arraignment with no prisoner to answer to his name, to have the indictment read to him, and to demand of him if he be guilty or not guilty? None whatever. Then this view disposes of the objection that the defendant was not called on to plead to the indictment. Besides, the defendant, by his conduct here, is not entitled to have himself arraigned and to have himself called on to plead to the indictment, for he took part in his trial at every stage until after the verdict of guilty was rendered, without once demanding this so-called right of arraignment He thereby waived any so-

10—61

called right to arraignment. This ground of appeal cannot be sustained.

We will next consider the alleged error of the Circuit Judge in causing certain jurors to stand aside. The first ground of appeal presents this question, and is as follows: "First. Because his Honor erred, it is respectfully submitted, in holding and ruling that jurors related by blood, or connected by marriage within the sixth degree, to either of the parties, were disqualified from sitting as jurors; and that both consanguinity and affinity within the sixth degree were grounds for legal exception under the statute; and in not holding that under the law a juror is legally disqualified only in those cases where he is related by blood to any of the parties; and that hence he erred in requiring the jurors, Brailsford, McFaddin and Carrigan, to stand aside as being legally disqualified to sit as jurors in the trial then in progress." The "Case" shows the following: "Upon motion of the solicitor, the jurors were placed upon their *voir dire,* and upon their examination the juror, T. R. Brailsford, testified that he was not related by blood to the defendant, nor by blood or marriage to the prosecutor, and that his relationship to the defendant consisted in his having married defendant's half-sister. The juror, J. McDowell McFaddin, testified that he was not related by blood or marriage to the prosecutor, and that his relationship to the defendant came about by reason of the defendant's marriage to the aunt of the said juror, who thereby became the nephew by marriage of said defendant. The juror, R. J. Carrigan, testified that he was not related by blood or marriage to the defendant, but was the cousin of the prosecutor. The presiding Judge ruled that under the statutes these jurors were legally disqualified to sit as such; that jurors related by blood or connected by marriage within the sixth degree to either of the parties, were disqualified from sitting as such; that both consanguinity and affinity within the sixth degree, were grounds for legal exception under the statutes, and ordered the jurors above named to stand aside, and refused to per-

mit them to be presented—the defendant excepted in each instance. The two first named jurors were made to stand aside before the defendant had exhausted his peremptory challenges and the last named afterwards." This Court has repeatedly held that the question of whether a juror is indifferent or not is confided, under sec. 2403 of the Revised Statutes of this State, to the Circuit Judge for his decision. The section referred to reads as follows: "The Court shall, on motion of either party in suit, examine, on oath, any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the Court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause and another shall be called." While the Circuit Judge committed error in stating that jurors related by blood or connected by marriage within the sixth degree to either of the parties, were disqualified from sitting as such, that both consanguinity and affinity within the sixth degree were grounds for legal exceptions *under the statutes,* still he stated a very salutary rule. Certainly the legislature has interdicted Judges from sitting in cases of such relationship, and it is a good guide to the exercise of a sound discretion by a Circuit Judge to observe the same degree of relationship. No doubt, he meant to give this as a reason for his not regarding the jurors presented as indifferent because *related* to the defendant or prosecutor. The fact of relationship was in his mind; the degree of such relationship he mistakenly thought was governed by statute. This being so, his error was not serious or harmful.

Lastly, we will consider those exceptions which are of serious moment, and to which we have naturally given close attention. These grounds will be grouped and disposed of together. They are as follows: "Third. Because his Honor erred, it is respectfully submitted, in refusing

to charge the defendant's first request as follows: 'That under the present Constitution of this State, in all indictments and prosecutions for libel, the truth of the alleged libel, if made out to the satisfaction of the jury, is a complete and perfect defense, and must result in the acquittal of the defendant;' and in charging the jury that he did not construe the Constitution in that way, and that even if the defendant had made out to the satisfaction of the jury the truth of the alleged libellous charges, yet the same would constitute no justification or defense; whereas, it is respectfully submitted that his Honor should have charged as requested, and should have held that under the present Constitution, in all indictments and prosecutions for libel, the truth of the alleged libel, if made out to the satisfaction of the jury, is a complete and perfect defense as in a civil action, and that he erred in not so holding. Fourth. Because his Honor erred, it is respectfully submitted, in charging the jury as follows: 'I do not understand it (the Constitution) to go any further than to allow the truth as a mitigation;' in that thereby his Honor not only took from the jury the right to consider the truth of the alleged libel, if made out to their satisfaction, as a complete justification and defense to the indictment, but he also thereby took from the jury the right to consider the truth of the alleged libel, if made out to their satisfaction, as negativing the malice charged against the defendant in the indictment. And the defendant submits that he was legally entitled at least to have the truth of the alleged libel, if made out to the satisfaction of the jury, considered by them as negativing the malice charged against him in the indictment, and not merely as a 'mitigation,' as erroneously held by his Honor. And because the erroneous charge of his Honor left the jury no alternative but to find the defendant guilty, if they found the fact that he caused the publication of the alleged libel. Fifth. Because his Honor erred, it is respectfully submitted, in refusing the defendant's second request as follows: 'That the motive and intent with which an alleged libel is punished is,

under the present law in South Carolina, immaterial, if the alleged libel is founded upon the truth; and if the jury find that the matters charged in the alleged libel in this case are true, it is their duty to acquit the defendant.' And defendant submits that the Constitution of 1895, having eliminated the following words from the Constitution of 1868, 'or when the matter published is proper for public information, the truth thereof may be given in evidence,' the motive with which a libellous publication is published is now immaterial, if the alleged libel is true in fact, and his Honor erred in not so holding. Sixth. Because his Honor erred, it is respectfully submitted, in refusing the defendant's third request, as follows: 'That it matters not, under the present Constitution of this State, whether the publication of an alleged libel is actuated by malicious motives, if the jury find that the matters charged in such libel are true in fact, and that if they so find in this case, it is their duty to acquit;' and in charging the jury as follows: 'I do not construe the Constitution to mean that;' for that thereby the jury was in effect charged that the defendant might be convicted if the alleged libel was published with improper motives, even although such libel was true in fact. Seventh. Because his Honor erred, it is respectfully submitted, in refusing the defendant's fourth request, as follows: 'That if the jury find that the matters charged against the prosecutor by the defendant in the alleged libel are not true in fact, and have not been established by the testimony, yet if they further find that the defendant believed them to be true, and acted upon such belief without negligence, it is their duty to acquit the defendant;' for that thereby the jury was in effect charged that the defendant might be convicted, even although he acted innocently, but mistakenly, but without negligence in publishing the alleged libel. Eighth. Because his Honor erred, it is respectfully submitted, in refusing the defendant's sixth request, as follows: 'If the jury find that the defendant was mistaken in the matters charged against the prosecutor in the alleged libel, and that said matters are not true, yet if

they find that the defendant acted upon a mistaken belief of the truth of such charges, upon probable cause and without negligence, the defendant would be entitled to an acquittal;' for that thereby, the jury were in effect charged that the guilt of the defendant depended simply upon the fact of the publication without regard to the motives actuating him in such publication. Ninth. Because his Honor erred, it is respectfully submitted, in refusing defendant's eleventh request, as follows: 'That it is incumbent on the State in this prosecution to establish beyond all reasonable doubt, to the satisfaction of the jury, that the libellous charges alleged to have been made by the defendant are malicious and false; and unless these facts are so established, the defendant should be acquitted;' for that thereby the jury were in effect charged, that it is not necessary for the State to prove that the publication of the alleged libel was done maliciously, or that the same was false, and that the guilt of the defendant depended simply upon the fact of publication, without regard to its having been done maliciously, although the indictment charged the same, was false and malicious. Tenth. Because his Honor erred, it is respectfully submitted, in refusing the defendant's twelfth request, as follows: 'That if the jury be satisfied that the alleged libellous words, said to have been published concerning the prosecutor, William S. Richbourg, are true in substance and fact, the defendant should be acquitted;' for that thereby the jury were in effect charged that the truth of the alleged libel, if made out to the satisfaction of the jury, was no defense to the indictment. Eleventh. Because his Honor erred, it is respectfully submitted, in refusing the defendant's thirteenth request, as follows: 'That if the jury find that the alleged libellous language set forth in the indictment is true in substance and in fact, they should find the defendant not guilty, though they are satisfied that such words were maliciously published by the defendant;' for that thereby the jury was in effect charged, that the defendant might be convicted if the motive was improper, although the matters charged in the libel were in fact the

truth. Twelfth. Because his Honor erred, it is respectfully submitted, in refusing the defendant's fourteenth request, as follows: 'If the defendant should fail to establish the truth of the alleged defamatory matter, yet if from all the facts and circumstances adduced in evidence, out of which the libellous publication emanated, or which led up to it, the jury believe that the defendant at the time of the publication actually believed the alleged libellous matter to be true, and that he had reasonable grounds for such belief, he should not be convicted;' for that thereby the jury were in effect charged that the defendant might be convicted for the alleged libel, although the same was innocently and mistakenly published by him."

Before we begin a brief discussion of these questions, it would be well to understand the nature of the misdemeanor with which the defendant stands charged. In the 18 vol. of Encyclopaedia of American and English Law, at page 861, we find the following definition: "A libel is a malicious defamation expressed either by writing or printing, or by signs, pictures, effigies or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule or obloquy; or to cause him to be shunned or avoided, or to injure him in his office, business or occupation." This definition is sustained by our own cases of the *State* v. *Farley,* 4 McC., 317; *Fonville* v. *McNease,* Dudley, 303. No difficulty arises in this cause as to the definition of libel. It seems to us it is the old battle as to the power of the jury to determine the intent of the person who has published the libel, it being contended on the one side, that all the jury can determine is the publication of the libel, and the truth of the innuendoes, while the intent was to be determined by the Court, while on the other hand it was contended that the whole case was to be submitted to the jury for their verdict. The former was the practice in the English Courts until the statute passed in the thirty-

second year of the reign of George III., which restored to juries the right of deciding upon the intention as well as the fact of the publication and the truth of the inuendoes. A practical illustration of this may be found in the case of the *State* v. *Allen,* 1 McC., 525. In the case just cited, Judge Johnson, in his charge to the jury stated, "that in prosecution for libels, it was not within the province of the jury to decide on the intent of the defendant, or whether the publication was libellous or not, but that the only questions for their consideration were: First, whether the defendant was the publisher of the piece charged in the indictment, and secondly, whether the innuendoes were true? That the intent was the inference of the law, to be decided by the Court after the fact of publication and the truth of the innuendoes had been found by the jury, and that a general verdict would amount to no more than finding the fact of publication and the truth of the innuendoes." But the Court of Appeals reversed the Circuit Court as to such instructions, stating that a general verdict of the jury in cases of libel settled the *intention,* as well as the matter of publication and the truth of the innuendoes. The appellant virtually contends that the Circuit Judge, his Honor, Judge Townsend, practically adopted the views announced by Judge Johnson, when he limited the effect of the defendant's testimony as to the truth of the libel to merely a mitigation of the damages, thus depriving the appellant here (who was the defendant below) of having the jury to determine the matter of defamation to character of the prosecutor by the defendant, if the said defendant published the truth concerning said prosecutor. In the Constitution of 1868, art. I., sec. 8, it was provided: "In prosecutions for the publication of papers investigating the official conduct of officers or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence; and in all indictments for libel, the jury shall be the judges of the law and the facts." Our Constitution, adopted in the year 1895, provides in art. I., sec. 21, "In all indictments or

prosecutions for libel, the truth of the alleged libel may be given in evidence, and the jury shall be judges of the law and fact." No complaint is made as to the Circuit Judge in admitting testimony which had for its object the proof of the truth of the alleged libel. All such testimony that was offered was admitted. But the appellant complains that after he had introduced such testimony, the Circuit Judge refused to the jury the right to apply such testimony in determining if the alleged libel was true, and limited such testimony to mitigation. Let us examine the question a little more carefully by contrasting the provisions of the Constitutions of 1868 and 1895, respectively, by means of parallel columns.

*Con. 1868, Art. I., Sec. 8.*

"In prosecutions for the publication of papers investigating the official conduct of officers or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence; and in all indictments for libel the jury shall be the judges of the law and facts."

*Con. 1895, Art. I., Sec. 21.*

"In all indictments or prosecutions for libel, the truth of the alleged libel may be given in evidence, and the jury shall be the judges of the law and the facts."

We should remember that it has been decided in this State in the case of the *State* v. *Lehre,* 2 Brev., 446, that a person who was indicted for libel, could not give any evidence tending to prove the truth of the libellous matter without the consent of the prosecutor. Hence the Constitution of 1868 proposed a remedy for such wrong by giving to certain persons the right to prove the truth of such libel. But the Constitution of 1895 went further and threw wide open the door to *all persons,* who were indicted or prosecuted for libel, to show the truth of said libel—making the

jury judges of the law and the facts. It is no part of the duty of a Court to expound or construe that which is plain. You cannot make by discussion anything plain which by the words used is already plain. The Circuit Judge having felt it his duty to limit the application of this constitutional guarantee to every person who is indicted or prosecuted for libel, to show by evidence the truth of the libellous words, was in error. And as this error may have contributed to the verdict of guilty, a new trial must be awarded.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and that the action be remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE McIVER. I concur in the result solely upon the ground that the Circuit Judge erred in commenting upon the first request to charge, when he used the following language: "I refuse that request because I don't understand the Constitution that way; I don't understand it to go any further than to allow the truth as a mitigation." That language was calculated to mislead the jury into the belief that the truth of the libel could only operate as *a mitigation* of the punishment for the offense charged. Whereas I think the true construction of the Constitution is simply to make the truth of the alleged libel *competent* testimony, and not to declare what shall be the effect of such testimony. I do not, therefore, assent to the proposition contended for by the appellant—that the truth of the matters charged in the libel shall constitute a complete defense. On the contrary, I think such testimony can only operate as a circumstance tending to negative malice.

MESSRS. JUSTICES GARY and JONES *concur in the result.*