16745

SMITH v. QUATTLEBAUM *ET AL.*
(76 S. E. (2d) 154)

*Messrs. James B. Hare, B. W. Crouch,* and *Butler B. Hare,* all of Saluda, *for Appellant,*

*Messrs. B. E. Nicholson,* of Edgefield, and *Jeff D. Griffith* and *Billy C. Coleman,* of Saluda, *for Respondent,* ▮▮▮

May 14, 1953.

G. Badger Baker, Acting Associate Justice.

This case came on for trial at the November, 1952, term of Court of Common Pleas for Saluda County, resulting in a verdict by the jury in favor of the respondent against the appellant for the full amount demanded in the complaint, to wit, $3,750.00, upon which judgment was entered in due course. The Ridge Banking Company was made a defendant for the reason that appellant had placed the funds in dispute in this bank to his special account. No motion of any nature was made in connection with the case following the publica-

tion of the verdict and before the *sine die* adjournment of court on the same date, November 12, 1952.

On November 20, 1952, appellant served notice on respondent that he would appear before Judge Pruitt, at Lexington, to move for a new trial on the basis of after-discovered evidence, or more properly described, after-discovered disqualification of a juror who sat in the trial of the case.

When the case was called for trial, Judge Pruitt asked the jury panel if any were related by blood or connected by marriage with respondent. A similar question was asked concerning appellant. One juror responded and was disqualified by reason of his relationship to respondent. The trial Judge then stated to counsel: "There seems to be none, Gentlemen. Any further questions any of you would like for me to ask?" Apparently counsel were satisfied for there was no response to this query.

The jury as selected included a juror bearing the name of James Pou who is related to respondent within the sixth degree, the great-grandfather of each being the common ancestor. At the time of the selection of the jury this relationship was not known to the litigants, their counsel or to the juror, and not known to litigants and counsel until after the court had adjourned *sine die*. The first knowledge of kinship came to Mr. Pou during the trial when a witness testified his wife is a sister of respondent and Mr. Pou knew of his relationship with the wife of the witness, and it then occurred to him he was related to respondent but he said nothing about it for fear of doing the wrong thing. Several days after court had adjourned the juror advised counsel for appellant of this relationship. All of the foregoing information comes from affidavits submitted for or against the motion for a new trial. These affidavits show that Mr. Pou and respondent were strangers and had not recognized or known of any relationship, and, further, that counsel for appellant and respondent, respectively, were very diligent in their pre-

trial investigation of any possible relationship of their clients with any member of the panel.

At the hearing on the motion it was resisted by respondent on lack of merit and loss of jurisdiction by reason of *sine die* adjournment of court. Judge Pruitt, in his order denying the motion, did not make any decision on the question of jurisdiction and specifically refrained from passing thereon. He founded his order on the contents of the affidavits of the juror wherein the juror stated he did not know respondent or recognize any relationship, and after learning of the connection "in no way did he permit his relationship with the plaintiff to affect his decision in the matter." Judge Pruitt further stated a just verdict was rendered, to which verdict the plaintiff was clearly entitled.

The appellant's exceptions may be expressed in one question: Did the trial Judge abuse his discretion in refusing to grant a new trial upon ascertaining that a juror was related to one of the litigants within the sixth degree? The respondent offers a sustaining ground, to wit, the lower court was without jurisdiction to hear the motion or grant a new trial.

There is no statute that disqualifies a juror by reason of relationship or kinship with any of the parties to an action. The only statute on the point is Section 38-202 of the 1952 Code:

"The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror therein to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion or is sensible of any bias or prejudice therein and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause and another shall be called."

In *State v. Brock,* 61 S. C. 141, 39 S. E. 359, 361, which construes the foregoing section, is the following: "* * *

While the circuit judge committed error in stating that jurors related by blood or connected by marriage within the sixth degree to either of the parties were disqualified from sitting as such, that both consanguinity and affinity within the sixth degree were grounds for legal exceptions *under the statutes,* still he stated a very salutary rule. Certainly, the legislature has interdicted judges from sitting in cases of such relationship, and it is a good guide to the exercise of a sound discretion by a circuit judge to observe the same degree of relationship. * * *"

We also quote from *State v. Merriman,* 34 S. C. 16, 34, 12 S. E. 619, 625, cited and followed in *Sims v. Jones,* 43 S. C. 91, 20 S. E. 905:

"We are not aware of any statute fixing the degrees, either of consanguinity or affinity, within which a juror is disqualified; and it must therefore be left to the circuit judge to determine whether the fact that the juror's father and the grandfather of the accused were brothers was such a relationship as would be likely to render the juror not indifferent in this case."

It is not by reason of consanguinity or affinity that a juror becomes disqualified, but in the exercise of the discretion of the trial Judge he is subject to disqualification because of possible interest in the cause. Those related within the sixth degree are generally excused, without being questioned, in compliance with the salutary rule.

Before passing upon the question as to whether there was an abuse of discretion in refusing to grant a new trial, the jurisdictional issue, respondent's sustaining ground, should be first decided.

Generally when a trial Judge adjourns his court *sine die,* he loses jurisdiction of a case finally determined during that term, except under special circumstances, *Shillito v. City of Spartanburg,* 215 S. C. 83, 85, 54 S. E. (2d) 521. An exception to this general rule is a motion for new trial on after or newly discovered evi-

dence, based upon the broad principles of the furtherance of justice. Such motions come within Section 10-1215, Code of 1952, wherein the time is not limited within which the motion must be made, *Sams v. Hoover,* 33 S. C. 401, 12 S. E. 8, *State v. Williams,* 108 S. C. 295, 93 S. E. 1006.

There is no sound reason why a motion for new trial on after-discovered disqualification of a juror, alleged as such, should not be within the same category as the motion referred to in the preceding paragraph. It is the duty of the trial Judge to ascertain the qualifications of the jurors, and when the discharge of this responsibility is thwarted by mischance, or otherwise, it is within the Court's inherent power to remedy the situation, when brought to his attention, even after *sine die* adjournment of court, by the granting of a new trial, if, in its discretion, necessary.

Apparently in all cases in this state, except one, in which a motion for new trial was made by reason of the disqualification of a juror, said motion was heard before adjournment of court. The exception is *Robertson v. Western Union Telegraph Company,* 90 S. C. 425, 73 S. E. 786, tried during the March term, 1911, of the Court of Common Pleas for Edgefield County. Several months thereafter counsel for defendant-appellant received knowledge that the foreman of the jury was the uncle of plaintiff-respondent. A motion for new trial was made before the presiding Judge at the October term of court. Although the jurisdiction of the lower court to hear the motion was not questioned, nevertheless the case indicates the presence of jurisdiction since the lower court or this Court, on its own motion, could have raised the point, if meritorious.

The next issue is whether the trial Judge abused his discretion in failing to grant a new trial. We now reproduce a portion of Judge Pruitt's order giving his reasons for refusal of the motion:

"* * * I am clearly of the opinion that the plaintiff, under the testimony and the law in this case, was entitled to the verdict which was rendered. The testimony fully supported the verdict as rendered by the jury. The juror, 'Pou', as shown by the affidavits, did not know of any relationship until the trial was in progress and had never recognized any relationship between him and the plaintiff. It is my opinion that a just verdict was rendered in this case and that the ends of justice will be served by not disturbing the verdict rendered."

If respondent's right to a verdict was a close issue, or questionable, then undoubtedly Judge Pruitt would have ordered a new trial, even though he concluded the juror was impartial. It does not always follow, as a rule of law, that a new trial should be granted when after trial there is discovered the presence of a relative on the jury. There would be no room for the exercise of discretion if a new trial followed as a matter of law.

In *Frost v. Protective Life Ins. Co.,* 199 S. C. 349, 19 S. E. (2d) 471, 473, it is stated, "Judicial discretion is an elastic, relative term, and any attempt to define it is generally regarded as a difficult and dangerous undertaking. As was said in *Norris v. Clinkscales,* 47 S. C. 488, 25 S. E. 797, 801: 'The term "discretion" implies the absence of a hard and fast rule. The establishment of a clearly-defined rule would be the end of discretion.' "

The burden of showing abuse of discretion rests upon appellant. He is confronted by the fact that the trial Judge believes a just verdict was rendered and the ends of justice have been served. This is a specific conclusion on the merits of the case. Nothing appears to the contrary.

The refusal to set aside a just and fair verdict and grant a new trial is not an abuse of discretion.

Appellant relies strongly upon the case of *Robertson v. Western Union Telegraph Company, supra.* In that case the

presiding Judge refused to grant a new trial and on appeal the Supreme Court held the presiding Judge erroneously exercised his discretion and the motion should have been granted. The *Robertson case* does not control the present one. What amounts to a wise exercise of judicial discretion or an erroneous exercise thereof depends on the circumstances of each case.

The reasons given by Judge Pruitt for his refusal are sufficient to draw a line of marked distinction between this case and the *Robertson case*.

Appellant's exceptions are overruled, and the judgment appealed from affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.