21830

In the Matter of TWO ANONYMOUS MEMBERS OF THE
SOUTH CAROLINA BAR, Respondents.
(298 S. E. (2d) 450)

*Atty. Gen. Daniel R. McLeod, Sr. Asst. Atty. Gen. Richard B.
Kale, Jr.,* and *Asst. Atty. Gen. C. Havird Jones, Jr.,* Columbia,
*for complainant.*

*John E. Parker,* Hampton, *for respondent.*

Dec. 21, 1982.

LEWIS, Chief Justice:

Respondents, Members of the South Carolina Bar and asso-
ciated together in the practice of law, were charged with
conduct which tends to pollute the administration of justice
and bring the courts and the legal profession into disrepute, in
that they made prohibited contact with the sister of a pro-
spective juror in violation of DR7-108(A & F) of the Supreme
Court Rules of Disciplinary Procedure.

DR7-108(A & F), the Rule under which respondents are
basically charged, provides as follows:

(A) Before the trial of a case a lawyer connected therewith shall not communicate with or cause another to communicate with anyone he knows to be a member of the venire from which the jury will be selected for the trial of the case.

\* \* \* \*

(F) All restrictions imposed by DR7-108 upon a lawyer also apply to communications with or investigations of *members of a family* of a veniremen or a juror. (Emphasis added.)

The testimony in brief is as follows: The respondents were practicing law together when one of them became court-appointed counsel in a capital case. About one week prior to jury selection, the associate of appointed counsel inquired of a client if she was related to a prospective juror having a similar name. The client informed this respondent that she was the sister of the juror. Associate counsel then, after having been informed of the family relationship between the client and the juror, proceeded to inquire of the client concerning the juror's attitudes toward capital punishment and the existence of racial prejudice.

Later, apparently without communicating with his associate, court-appointed counsel, who knew of the family relationship between the client and the juror, also called the client and asked her about the juror's (her sister's) views on capital punishment and any possible racial prejudice. Both respondents told the client not to relate their contact with her to the juror. This request was disregarded by the client and subsequently the juror, on *voir dire* examination, revealed the contacts by respondents with her sister. The juror was ultimately excused from jury service because of an unrelated animosity toward respondent (the court-appointed attorney).

It is undisputed that respondents *knowingly* communicated with or contacted a sister of a prospective juror to obtain information concerning the juror's views on matters involved in a pending case with which they were connected. Complainant contends that such contact was in violation of the prohibition against an attorney communicating with "members of a family of a venireman or a juror" as referenced in DR7-108(F), supra. This position is based upon the contention that the phrase "members of a family" embraces "father,

mother and children, immediate blood relatives, whether living together or not." Respondents, on the other hand, argue that the prohibited conduct is confined to contact with "relatives living in the same household."

The decision in this case then turns upon the definition of the phrase "members of a family of a venireman or a juror," particularly the meaning to be given the word *family*, as used in DR7-108(F), supra.

It is generally stated that the word *family* is of great flexibility, variously defined, and is capable of many different meanings according to the connection in which it is used. See 16 Words & Phrases, Family, page 302. As stated in *LeRoux v. Edmundson*, 276 Minn. 120, 148 N.W. (2d) 812, 814, the meaning of the word *family* "necessarily depends upon the field of law in which the word is used, the purpose intended to be accomplished by its use, and the facts and circumstances of each case."

The main purpose of the present rules is to preserve the integrity of the jury system and thereby public confidence in the administration of justice by proscribing communications between attorneys and prospective jurors and the jurors' families. By prohibiting communication with a member of the family of a juror, it is intended to eliminate contacts with that group of persons who are so related to the juror by blood or marriage as to be able to exert influence because of close ties of kinship and who would be most likely to communicate any such contacts to the juror.

The exertion of influence arising from family ties is not confined to the relationship between members living in the same household. For example, a father may not live in the juror's household, yet would occupy such a close blood relationship as to be able to exert influence upon the juror. In such a case, the close blood relationship would render communication to the juror of any such contact most probable.

Contacts or communications by attorneys with prospective jurors should be above suspicion of impropriety and our interpretation of the rule should be so fashioned. While it is difficult to formulate any hard and fast rule, we think the meaning most nearly approaching the context in which the word *family* is here used includes persons related by blood or marriage to the juror within the sixth degree. This is the rule

applied in determining the interest of judges (Section 14-1-130, 1976 Code of Laws) and jurors (*Smith v. Quattlebaum*, 223 S. C. 384, 76 S. E. (2d) 154) in a cause, and appears to be a proper guide in determining the scope of the word *family* under the rule here in question.

We therefore hold that the term *family* as used in ■ DR7-108(F), supra, includes not only all persons residing in the same household but also all persons related by blood or marriage to the prospective juror within the sixth degree.

Therefore, any attorney connected with a case who knowingly communicates, or causes another to communicate, with a prospective juror, or any member of his household, or any person related to the juror, by blood or marriage, within the sixth degree violates DR7-108(A & F), supra, and is subject to disciplinary action.

This record shows conclusively that respondents know- ■ ingly communicated with a sister of a prospective juror concerning matters affecting a case with which they were connected. In doing so, they violated the terms of DR7-108(F) of the Rules of this Court on Disciplinary Procedure; and we so hold.

In view of the fact that the interpretation of the present Rule presents a novel question, we adopt a more lenient view of the punishment that should be imposed than the violation would ordinarily demand, and remand the cause to the Board of Commissioners on Grievances and Discipline for imposition of a private reprimand.

LITTLEJOHN, NESS and GREGORY, JJ., concur.

HARWELL, J., dissents.

HARWELL, Justice (dissenting):

I respectfully dissent as to the appropriate sanction to be imposed on these respondents. By publishing this opinion, we put the bench and bar on notice for the first time of our definition of the word "Family" as used in DR7-108(F), of the Supreme Court Rules of Disciplinary Procedure. I would not impose a private reprimand on these respondents under these circumstances.