581 S.E.2d 157

The **STATE**, Respondent,

v.

**James N. BRYANT, III, Appellant.**

**No. 25649.**

Supreme Court of South Carolina.

Heard April 1, 2003.
Decided May 12, 2003.

Assistant Appellate Defender Robert M. Dudek, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, all of Columbia; and J. Gregory Hembree, of Conway, for respondent.

PER CURIAM:

Appellant was convicted of murder and armed robbery and sentenced to death. Appellant argues the trial judge erred by denying his motion for a new trial on the basis that law enforcement's contact with jurors' family members compromised his right to a fair and impartial jury. We agree.

## *FACTS*

Appellant was indicted for the murder and armed robbery of Horry County Police Officer Dennis Lyden. Jury selection began on Monday, June 18, 2001. The next day, members of the jury pool were examined for the purpose of "death penalty qualification." On Wednesday, June 20, the parties agreed to select the jury from thirty-nine death penalty qualified jurors. Selection of the jury began on the morning of Thursday, June 21. The guilt phase of trial began the same day. The sentencing phase began on Sunday, June 24; the jury returned with its recommended sentence on Monday, June 25.

The following day, defense counsel learned improper contact may have been made with a member of the jury pool. After further investigation, appellant filed a motion for a new trial alleging members of the prosecution and/or their agents contacted jurors' relatives after the jurors were death penalty qualified. Appellant attached two affidavits to his motion; they are summarized below:

*Affiant 1:* Detective George Merritt of the Horry County Police Department telephoned her place of employment on June 20, 2001. He informed her he was conducting a background check on potential Juror AA. Affiant 1 stated she told Detective Merritt that Juror AA was her daughter. In addition to other questions, the detective asked Affiant 1 if she thought Juror AA could vote for the death penalty and Affiant 1 responded affirmatively. Detective Merritt told Affiant 1 their conversation could remain between the two of them and she did not have to tell Juror AA he had called. When Juror AA arrived for work, Affiant 1 told her the police had telephoned.

*Affiant 2:* On June 21, 2001, a police detective contacted her by telephone at her place of employment. The detective stated he was calling with questions regarding her husband's jury duty. The detective stated "they were trying to get a death penalty conviction" and inquired if her husband "could sign the paper for death." She told the detective she and her husband believed in the death penalty. The detective instructed Affiant 2 not to tell her husband about the telephone call until his jury service was completed.[1]

The State filed a response admitting it conducted investigations on the death penalty qualified jurors, but claiming the contact with jurors' family members was unintentional and did not prejudice appellant. The response stated the Solicitor's Office specifically requested Horry County Police Department Detectives George Merritt and Jamie Debari be assigned to conduct the inquiries because they had conducted investigations in two prior capital cases. The Solicitor's Office instructed detectives to use the following protocol in conducting background investigations of prospective jurors:

---

1. The State struck Juror AA; it excused Affiant 2's husband as an alternate juror.

1) An investigator may not call on the juror or any member of the household or any immediate family member of any death qualified juror, but may call on employers, neighbors, fellow church members, associates and/or acquaintances of the juror.

2) The investigator must identify himself and state the purpose of his inquiry from the outset of the communication.

3) The investigator must instruct the party to whom the inquiry is addressed that the fact that an inquiry has been made or information communicated though the inquiry must not be communicated to a death penalty qualified juror until after the trial of the Defendant is completed, or in the case of a juror who is not selected as a member of the petit jury, after jury selection is completed.

4) The investigator must end the inquiry immediately if the party to whom the inquiry is addressed indicates an unwillingness to speak with the investigator.

The State asserted it was not aware of any irregularities in the investigation until July 11, 2001, when the Solicitor's Office met with the Horry County Police Department detectives to discuss appellant's new trial motion. At that time, the Solicitor's Office learned a Horry County Police Department detective directly contacted family members of at least three death qualified jurors. The State's reply asserted the Solicitor's Office was unaware this detective had been appointed by the Horry County Police Department to conduct jury investigation.

The trial judge granted the State's motion for an evidentiary hearing. Prior to the hearing, the State and appellant agreed the trial judge would individually voir dire the twelve jurors and two alternates who sat on appellant's jury and ask a limited number of questions submitted by the parties. Summations of the jurors' testimony follows:

*Juror N:* Between death penalty qualification and being seated as a juror, she discovered Horry County Sheriff's Department detectives had questioned her neighbors. Initially, Juror N thought the questioning was related to her upcoming marital separation hearing. When she overheard

two jurors discussing contact, she realized the detective's inquiries were about the trial.

*Juror K:* After she was death penalty qualified, she saw an undercover officer question her neighbor. Although the neighbor declined to speak with Juror K about the conversation, Juror K assumed it was about the trial. Another death penalty qualified juror told Juror K a detective had questioned her neighbors, too.

*Juror J:* After trial, she learned detectives had gone to her husband's employment, but her husband was not present.

*Juror H:* After he was seated on the jury, he learned from Juror N that someone had spoken with her neighbors.

*Juror F:* After he was seated on the jury, another juror mentioned a detective had contacted her family member.

*Juror E:* While she was sequestered, Juror E's mother told her someone had contacted Juror E's father asking questions about Juror E. Juror E assumed it was about the trial. Juror E testified Juror K told her someone had gone to her neighbor's house and talked to them.

*Juror B:* He was aware during trial that a detective had contacted his employer and spoken with some of his coworkers; he assumed it was about the trial. Juror B stated he overheard other jurors discussing the fact that their neighbors or employers had been contacted.

In addition, appellant submitted sworn statements from nine death penalty qualified jurors. In seven of these statements, qualified jurors stated their relatives had been questioned by either detectives or unknown individuals. One juror stated an unknown person questioned his great aunt, mother, and thirteen year old daughter. Some jurors stated concern about the investigation, one expressly noting he felt as if the questioning amounted to jury tampering.

Concluding appellant's right to an impartial jury as guaranteed by the Sixth Amendment was not violated, the trial judge denied appellant's motion for a new trial.

## ISSUE

Did the trial judge err by denying appellant's motion for a new trial based on the assertion that contact between law

enforcement and jurors' family members compromised the impartiality of the jury in contravention of the Sixth Amendment to the United States Constitution?

## DISCUSSION

 The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant a fair trial by a panel of impartial and indifferent jurors. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *see also* S.C. Const. art. I, §§ 3 & 14. "[I]n order to fully safeguard this protection, it is required that the jury render its verdict free from outside influences of whatever kind and nature." *State v. Cameron*, 311 S.C. 204, 207, 428 S.E.2d 10, 12 (Ct.App.1993). In cases where a juror's partiality is questioned after trial, it is appropriate to conduct a hearing in which the defendant has the opportunity to prove actual juror bias. *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954).[2]

 After thorough consideration of the trial record, the new trial hearing, and the applicable law, we conclude appellant's right to a fair trial by a panel of impartial and indifferent jurors was compromised by the State's action. While we do not as a rule disapprove of juror background investigations,[3] we can not condone the activity which admittedly

---

2. Both the trial judge and State rely on the Rules of Professional Conduct (RPC), Rule 407, SCACR, to determine whether there was error. We note, however, that the RPC have no bearing on the constitutionality of a criminal conviction. *Langford v. State*, 310 S.C. 357, 426 S.E.2d 793 (1993); *see* Scope of RPC ("[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached."). For example, in *Gibson v. State*, 334 S.C. 515, 514 S.E.2d 320 (1999), the Court explained prosecutorial misconduct resulting from the failure to disclose information to the defense as required by the Constitution is not "necessarily synonymous" with misconduct as defined in the RPC because the focus of the analysis is different, i.e., the fairness of the procedure against the *defendant v. the attorney's alleged misconduct.*

3. *See Bailey v. State*, 309 S.C. 455, 424 S.E.2d 503 (1992) (recognizing need for background investigations of prospective jurors in capital trials); *Long v. Norris & Assoc., Ltd.*, 342 S.C. 561, 538 S.E.2d 5

occurred in this case.[4]

Here, appellant was indicted on a charge of capital murder for the death of a Horry County Police officer. After the State and appellant individually questioned each juror as to his or her view on the death penalty and the trial judge determined that thirty-nine jurors could fairly and impartially carry out their duties if seated on the jury (i.e., impose a sentence of either life imprisonment or death based upon the circumstances of the crime and the characteristics of appellant),[5] detectives from the Horry County Police Department contacted relatives of the qualified jurors. In at least two instances, the detectives asked family members whether their relative could impose the death penalty. In one instance, the detective informed a juror's wife the police wanted the death penalty. During the trial, the jurors were aware police investigators had contacted their family members.

We find the questioning of jurors' family members by Horry County Police detectives in a case in which the victim was a Horry County Police Department Officer was, at minimum, an attempt to influence the jury. *See In the Matter of Two Anonymous Members of the South Carolina Bar* 278 S.C. 477, 298 S.E.2d 450 (1982) (explaining purpose of former rule DR 7–108(F) prohibiting contact between lawyer and prospective juror's family was to eliminate ability of family member to exert influence). Under the circumstances, the questioning could have been perceived as an attempt to intimidate jurors. Given the nature of the case, the timing of the inquiries, and the questions which were asked, we conclude the jury investigation produced a jury which was not fair and impartial and,

(Ct.App.2000) (recognizing parties may conduct juror background checks so long as investigation meets requirements of RPC and other authorities).

4. The State concedes it is responsible for the conduct of the police detectives.

5. *See State v. Bennett*, 328 S.C. 251, 493 S.E.2d 845 (1997) (in capital case, proper standard for determining qualification of a prospective juror is whether the juror's views would prevent or substantially impair the performance of his or her duties in accordance with the instructions and oath).

therefore, appellant's Sixth and Fourteenth Amendment rights were violated.

Accordingly, appellant's conviction and sentence are **RE-VERSED.**[6]

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

6. We affirm Issue 3 pursuant to Rule 220(b)(1), SCACR, and the following authority: *State v. Byram*, 326 S.C. 107, 485 S.E.2d 360 (1997) (party cannot argue one basis for objection at trial and another ground on appeal).

In light of our disposition of this appeal, it is unnecessary to rule on the remaining issues presented.