17352

THE STATE, Respondent, v. REED LOFTIS, Appellant

(100 S. E. (2d) 671)

*John K. Grisso, Esq.,* of Anderson, *for Appellant,*

*Messrs. Rufus Fant, Solicitor,* and *Oscar H. Doyle, Jr., Ass't Solicitor,* of Anderson, *for Respondent,*

November 14, 1957.

Moss, Justice.

The appellant, Reed Loftis, was tried and convicted at the February 1957 term of General Sessions Court for Anderson County, South Carolina, before the Honorable J. Henry Johnson, presiding Judge, upon an indictment charging him with assault and battery of a high and aggravated nature.

While the jury was deliberating, and after the case had been submitted to them, the trial Judge, in the absence of the jury, instructed the bailiffs to take the jurors to lunch. They proceeded to escort the jury to a restaurant about a block from the courthouse and when they arrived at the restaurant it was discovered that one of the jurors was missing. The juror was located at his home and in response to instructions by one of the bailiffs he returned to the jury room in the courthouse. A son of one of the bailiffs went to the jury room and told the juror to join the other members of the jury at the restaurant. This son accompanied the juror from the courthouse to the restaurant. This juror was separated from the other jurors for a period of thirty minutes to one hour. It appears that after the jury had finished the meal that they returned to the jury room, and after additional deliberation and a further charge by the court, the appellant was found guilty.

Immediately upon learning of the separation of the juror in question, the appellant, through his counsel, informed the court of the happening and made a motion for a new trial, upon the ground that one of the jurors had separated himself from the jury after the case had been submitted to it, and while the jury was deliberating on the case.

The court cited the bailiffs and the juror for contempt. A hearing was had before the trial Judge. At the hearing affi-

davits of the two bailiffs were submitted and the testimony of one of the bailiffs was taken in open court. The testimony of the bailiff's son was likewise taken. An affidavit was submitted by the wife of the juror.

It appears from the affidavits of the bailiffs and from the testimony of one of the bailiffs that when the court directed that the jury be taken out to lunch, he announced such to the jury, but that when they arrived at the restaurant one of the jurors was missing. It further appears that one of the bailiffs called the juror by telephone, at his home, and told him to rejoin the other jurors. It also appears that the son of one of the bailiffs had accompanied his father to the restaurant and that this son went back to the courthouse and found the juror in the jury room. He instructed the juror to join the other jurors at the restaurant and accompanied him from the courthouse to the restaurant.

The juror in question was sworn and testified as follows:

"Q. You didn't understand that you were to get dinner on the County? A. No, sir."

And again from his testimony:

"Q. Well, how did you get away this time? A. I thought all the rest went home to dinner.

"Q. Were you the last to come out of the jury room? A. Yes, sir."

And again from the juror's testimony we quote the following:

"Q. Mr. Holcombe, I understand when the bailiffs were taking the jury to dinner that you left the jury—where did you go? A. I got in my car and went home.

"Q. Did you talk to anybody before you got there? A. No, sir.

"Q. Did anybody talk to you? A. No, sir.

"Q. When you got home, after you got home, did you talk about this case any? A. My wife asked me who we were trying and I told her.

"Q. Did you and your wife, or anybody, discuss the facts in the case at all? A. No, sir.

"Q. Then while you were at home, I believe you got a message that you were due to be with the jury? A. Yes, sir.

"Q. What did you do then? A. I went to the court house and went to the jury room.

"Q. You went to the jury room? A. Yes, sir.

"Q. During your absence from the jury—from the time you left until the time you got back with the jury, I will ask you: did you talk with anybody at all about the case? A. No, sir.

"Q. Did anybody talk to you about the facts in the case? A. No, sir."

The affidavit of the wife of the juror confirms that there was no discussion with her concerning the case, other than that which is related in the testimony of the juror. The testimony of the son of the bailiff confirms the fact that he did not discuss the facts of this case with the juror.

In making a motion for a new trial counsel for the appellant made the following statement: "I would like for the record to show that I am objecting to any statement that Mr. Holcombe might have to say with regard to no improper influence having taken place, *not that I have reason to believe that the man was improperly influenced,* but I think if he were he would be probably the last one in the world to admit it." (Italics added.)

The trial Judge, upon the completion of the hearing, exonerated the bailiffs and the juror of any contempt of court and refused the motion for a new trial. He stated with reference to the testimony of the juror, "I am satisfied that Mr. Holcombe has told me the truth and nothing but the truth when he says he didn't talk with anybody about this case, * * *". There is no appeal from this finding of fact. It is, therefore, binding upon this court.

The case is here on exceptions challenging the ruling of the trial Judge in refusing the motion for a new trial.

The mere fact that a jury wrongfully separates without leave of the court after submission of a case is not *per se* sufficient for setting aside a verdict. In the event of a separation the general rule is that a new trial will be granted if there is probability that the jury may have been tampered with, but not where the court is satisfied that the prisoner has not sustained injury. 53 Am. Jur., Trial, para. 879, at page 637.

In the case of *Pulaski & Co. v. Ward & Co.*, 2 Rich. 119, 31 S. C. L. 119, a motion was made for a new trial on the grounds that the jurors had acted improperly by some of them leaving the room after they had retired and before they had agreed upon a verdict. In dismissing the motion, the court said:

"In Harding's case [*State v. Harding*], 2 Bay, 267, and *Key v. Holeman, Ib.* [2 Bay] 315, the court laid down the rule that they would not hear affidavits of the misconduct of a juror unless copies of such affidavits were served on him before the adjournment of the court. We will not say that this rule of practice is so inflexible that there may not be exceptions to it. But in a case like the present, where the verdict was rendered on Tuesday, and the court sat until Saturday, late in the day, there can be no reason for departing from the decision. The court, therefore, will not hear the affidavits. But to be sure that there had been no tampering with the purity of jury trials, we have looked into the affidavits, and find that the juror who left the room, did so to obtain water for one of his fellows, and that his judgment, or that of his brethren, was not in any way affected by it. Still, we take this occasion to say, that the juror's conduct was very improper, and that if it had been brought to the view of the judge below, the juror, and the constable having the jury in charge, would have been severely punished.

"It may not be improper here to say that I entirely approve of the rule stated in Graham on New Trials, ch. iv. para. 6, p. 85, as to the effect of the misconduct of jurors in separating before they are agreed on a verdict, on a motion

for a new trial. 'Upon this point,' he says, 'the practice in this country appears to have resolved itself into the exercise of a judicial discretion, confining the motion for a new trial to the question of abuse, and invariably denying the application where no injury has ensued.' The motion is dismissed."

In the case of *Sartor v. McJunkin*, 8 Rich. 451, 42 S. C. L. 451, it appears that the jury had agreed upon their verdict, and dispersed without permission of the court. In refusing a motion for a new trial, the court said:

"The propriety of keeping a jury together until they have rendered in their verdict, cannot be too strongly inculcated; but the object is to obtain an unbiased expression of their judgment; and when, as in this case, it is obvious that their verdict was uninfluenced by any intervening cause, the Judge, in his discretion, was doubtless entitled to receive and record their verdict, although they had dispersed without his permission."

In the case of *McCarty v. McCarty*, 4 Rich. 594, 38 S. C. L. 594, a motion was made for a new trial on the ground that pending the trial, and after the court had adjourned for the night, one of the defendants, in company with another person, met some of the jurors at a drinking shop, and treated them to some liquor, and was there seen in conversation apart with one of the jurors. The court refused the motion. Upon appeal the court said:

"Some certain rule on the subject now before the Court would be most acceptable; it is not easily prescribed. I have examined the cases referred to in the argument, and such as I have been able otherwise to collect, and at last it would seem that when questions for new trials arise, founded on such complaints, they must depend rather on judicial discretion, than upon any strict law or absolute right; and whether, as a consequence, in any given case, the verdict should be avoided, must depend on the abuse presumed or proved to have followed, and the substantial justice of the

case. (Graham on New Trials, 66, 85; *Pulaski & Co. v. Ward & Co.,* 2 Rich. 119.)"

In the case of *State v. Way,* 38 S. C. 333, 17 S. E. 39, 45, a motion was made for a new trial on the ground that one of the jurors, after the adjournment of court, walked out of the courthouse with one of the prosecuting witnesses and was seen in conversation with him. The motion for a new trial was refused and upon appeal to this court, it was said:

"While, of course, it is highly necessary that the verdicts of juries should be accepted as the result of the unbiased judgment of the 12 members thereof, and while it is highly improper that any conversation should be had with a juror while he is charged with the trial of a cause upon the matter undergoing investigation, still the practice is sustained in this state of allowing jurors to separate after the day's session of the court, even in murder cases; and, unless it was established that some corrupt act, or highly improper influence, had been exercised to control a juror in reaching his verdict, it would not be error on the part of a circuit judge to refuse to set aside a verdict upon the bare suspicion that something improper had occurred."

In the case of *State v. Wine,* 58 S. C. 94, 36 S. E. 439, this court, in refusing to reverse a murder conviction under the facts related in the opinion, said:

"It seems the facts are as follows: Some one handed a letter to the deputy clerk, addressed to Zeigler, one of the jurors. Upon the judge's attention being called to it, he directed that the letter be handed to the juror. It was not examined by the presiding judge, nor did he ask counsel if there was any objection to allowing the juror to receive the letter. The conduct of a trial must in a great measure, be left to the sound discretion of the presiding judge. There are no facts in this case tending to show that the appellants were prejudiced by the action of the circuit judge. The exception is therefore overruled."

In the case of *Watts v. South Bound R. Co.,* 60 S. C. 67, 38 S. E. 240, 243, this court laid down the following rule:

"The matter of granting new trials for alleged misconduct of the jury is intrusted to the judicial discretion of the trial court, and this court will not interfere unless it clearly appears that there was an abuse of discretion. The case discloses no abuse of discretion. The affidavits submitted showed very clearly that there was no ground for suspicion, even, that any member of the jury had been subjected to improper influence."

In the case of *McGill Bros. v. Seaboard Air Line Ry.,* 75 S. C. 177, 55 S. E. 216, 217, this court set forth the rule by which a trial Judge should be governed in passing upon matters involving the misconduct of jurors. It was stated:

"In the first place, the reasons for refusing to interfere with the discretion of a circuit judge in matters involving the purity of the jury box and the integrity of verdicts are peculiarly strong. He is in the atmosphere of the trial, and has opportunity to estimate the character and intelligence of the jurors, as well as of the person charged with improper conversation or corrupt dealings with them. He has opportunity also to consider the verdict in the light of the evidence and the sources from which the evidence comes, and determine whether the verdict has so little support as to indicate corrupt or improper influence. These and perhaps other things afford the trial judge such superior means of coming to a just conclusion, that before disturbing his order on such a subject, an appellate court should require very clear evidence of abuse of discretion."

In the case of *State v. Williams,* 76 S. C. 135, 56 S. E. 783, this court held that where a juror accidentally separated from his fellow jurors, while going to dinner, for a few minutes, and that others went to a barber shop in charge of a constable, no one having spoken to them about the case, are mere irregularities, which will not invalidate a verdict.

In the case of *State v. Rowell,* 75 S. C. 494, 56 S. E. 23, 29, it appears that a bailiff talked about the case being tried

in the presence of one of the jurors and asserted that the defendant should be punished. The trial Judge held that there was nothing before him that the verdict was influenced by such statement. Upon appeal to this court, it was said:

"Objections to verdicts on the ground that one or more of the jurors has been subjected to outside influences must be looked at in a practical way and every case decided on its own facts. Those cases are strongest in which the juror has lent himself to such influence as signified a willingness to receive advice or favors. Those, however, who are selected to serve as jurors must be considered to have personal firmness and conviction, and not be presumed to bend to every wind of opinion that blows around their ears. Where, without any misconduct on the part of the juror or the constable who had him in charge, an opinion was imprudently volunteered in the presence of the juror by another constable, we do not think it would be reasonable to reach the decision that the conclusion of this juror and the whole panel was influenced by it."

The appellant asserts that under the authority of the case of *State v. Senn*, 32 S. C. 392, 11 S. E. 292, and the case of *State v. Campbell*, 144 S. C. 53, 142 S. E. 31, 33, that the trial Judge committed error in refusing to set aside the verdict and grant a new trial. An examination of these two cases show that the facts involved therein are not similar to the facts involved in this case. In the *Senn case* it appears that persons other than members of the jury were permitted to mingle with the jurors while they were deliberating on their verdict. In this case the court ordered a new trial because of the fact that the jury, while considering the case, left the jury room without permission, and went into the court room to continue their deliberation. There were bailiffs in the court room and the jury and the bailiffs mingled together around the stove while the deliberations were in progress. In the *Campbell case* it appears that after the jury had retired to their room for a few minutes that they were then taken to a restaurant, the jury being in custody of a

deputy sheriff who was seated at the table with several of the jurors while they had supper. The record shows that this deputy was the bondsman for one Taylor, who, according to the theory of the defense, killed the deceased. The record also shows that after the deputy sheriff was on the bond of Taylor that he had a conference with the Solicitor and later the indictment against Taylor was *nol prossed* and an indictment found against the defendants. It also appears that this deputy sheriff accompanied the Solicitor to the scene of the homicide to. take photographs of the surroundings. In the opinion in this case, the court points out that the deputy sheriff had no authority to be present with the jurors and bailiffs in charge of the jury. The court, in view of the interest of the deputy sheriff, says that:

"While it is made to appear that the jury, after retiring to their room, having been exposed to outside influences, the court should, without inquiring whether such influences have been exerted, set aside the verdict."

This holding was based upon the fact that the deputy sheriff had a peculiar interest in the outcome of the case and without authority was present and conversed with the jurors after they had retired.

It affirmatively appears, from the record in this case, that the juror who was separated from the jury under the circumstances heretofore outlined, was not subjected to any outside influence by word or act. There is no showing that any outside influence reached the juror or the jury. The reverse is true. The motion of the appellant was addressed to the discretion of the presiding Judge and we see no abuse of discretion in refusing the motion. There is nothing in the record to show any injury or prejudice to the appellant.

Judgment affirmed.

STUKES, C.J., and TAYLOR, OXNER and LEGGE, JJ., concur.