654 S.E.2d 523

**James A. SMITH, Petitioner**

v.

**STATE of South Carolina, Respondent.**

**No. 26405.**

Supreme Court of South Carolina.

Submitted Sept. 20, 2007.

Decided Dec. 10, 2007.

508

Appellate Defender Aileen P. Clare, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, Columbia, for petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Jeanette Van Ginhoven, of Columbia, for respondent.

## ON WRIT OF CERTIORARI

Justice BEATTY:

Petitioner was convicted of two counts of murder. After his convictions were affirmed on direct appeal, Petitioner brought this action seeking post-conviction relief (PCR) on the grounds both his trial counsel and appellate counsel were ineffective. We granted certiorari to review the PCR judge's denial of relief to Petitioner. We affirm.

## FACTUAL/PROCEDURAL HISTORY

On June 1, 1997, Gwen Utsey reported to the Colleton County Sheriff's Department that her sister-in-law, Hattie Mae Yates, and Yates's two-week-old daughter, Moesha, had been missing for one day. On June 5, 1997, deputies discovered Hattie Mae's abandoned car in a wooded area near the

home of Petitioner and his girlfriend, Darlene Winningham. On June 16, 1997, Winningham gave a statement to Detective Steve Bazzle in which she claimed Petitioner had killed Hattie Mae and Moesha Yates. Winningham informed Detective Bazzle where the bodies were located, but denied that she had been involved in the murders or the subsequent "cover up." Based on this information, investigators with the sheriff's department recovered the bodies in a make-shift grave.

Upon discovering that Winningham had identified him as the primary suspect, Petitioner gave a lengthy statement to Detective Bazzle. According to Petitioner, Hattie Mae, his crack cocaine supplier, drove to his home in Cottageville on the afternoon of May 31, 1997, to discuss a crack cocaine transaction. As Hattie Mae waited in her car with Moesha, Petitioner went inside the home to retrieve cash for the transaction. Petitioner claimed that Winningham "flipped out" and began shooting when he attempted to pay Hattie Mae with $100 that he had taken from Winningham. Petitioner then stated he attempted to cover up the crime by hiding Hattie Mae's car, burying the bodies, and disposing of the rifle. Following his statement, Petitioner led detectives to a pond where he had hidden the murder weapon.

Both Petitioner and Winningham were charged with the murders. At Petitioner's trial, Winningham testified for the State. Winningham testified that on May 31, 2007, at around 3:00 p.m., her friend drove her and her three children home after taking them to the grocery store. According to Winningham, Petitioner came out of the house and told her to take the children to their grandfather's home. When Winningham returned home, Hattie Mae came to the Petitioner's home and pulled around to the back porch. Winningham stated she heard a "gun go off" and Petitioner yelled for her to check the road to see if there were any cars coming toward the home. Winningham claimed Petitioner then drove off in Hattie Mae's car through the back yard into a field. Petitioner returned and requested Winningham's help after he struck a tree. Winningham stated that she saw Hattie Mae lying dead on the ground and Moesha lying still in the car seat. Winningham testified that over the course of the next three days Petitioner returned to the woods several times and engaged the assistance of Kenneth Dale Bazzle, Jr., Winningham's oldest son, to

empty and burn the contents of Hattie Mae's car, to hide the car in the country, and to bury the victims' bodies. Kenneth Dale Bazzle corroborated Winningham's testimony. Additionally, Kenneth Dale stated that Petitioner told him that he had killed Hattie Mae and Moesha.

Petitioner testified in his defense. Although he recounted a similar sequence of events as that described in the State's case, he adamantly denied that he shot Hattie Mae and Moesha. He maintained that Winningham became enraged and fired into Hattie Mae's car after he handed $100 to Hattie Mae for crack cocaine.

The trial court submitted two counts of murder to the jury. The jury found Petitioner guilty of both counts, and the trial court sentenced Petitioner to life imprisonment without parole and a consecutive thirty-year term.

After his convictions were affirmed on direct appeal, Petitioner filed for PCR. In his application, Petitioner asserted he was being held unlawfully because: (1) his convictions and sentences for two counts of murder were unconstitutional in that they constituted a violation of the Double Jeopardy Clause; (2) the solicitor made improper comments during his closing argument; (3) after-discovered evidence required reversal of his convictions and sentences; and (4) his trial counsel and appellate counsel were ineffective. Subsequently, Petitioner amended his petition to include an allegation that after-discovered evidence revealed one of the jurors knew him from being incarcerated in the same facility and shared this information with the other members of the jury.

The PCR judge held a hearing on the petition. At the hearing, Petitioner testified and presented the testimony of Juror Floyd Walling as well as John D. Bryan, Petitioner's trial counsel. The PCR judge also permitted Petitioner to supplement the record with the statement and affidavit of Kenneth Dale Bazzle in order to compare the statement with Bazzle's trial testimony.

The PCR judge denied Petitioner relief and dismissed his application with prejudice. The PCR judge held trial counsel was not ineffective for failing to: (1) request specific jury *voir dire* questions which would have uncovered Juror Walling's prior relationship with Petitioner; (2) object to the solicitor's

improper closing argument; and (3) object to a portion of Winningham's testimony. Additionally, the PCR judge found appellate counsel was not ineffective in presenting Petitioner's direct appeal to the Court of Appeals. Petitioner appeals from this order.

## STANDARD OF REVIEW

A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 370, 169 L.Ed.2d 247 (2007).

In a PCR proceeding, the applicant bears the burden of establishing that he is entitled to relief. *Caprood v. State,* 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). In order to prove that counsel was ineffective, the PCR applicant must show that: (1) counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Ard,* 372 S.C. at 331, 642 S.E.2d at 596. "Furthermore, when a defendant's conviction is challenged, 'the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

"This Court gives great deference to the post-conviction relief (PCR) court's findings of fact and conclusions of law." *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005). A PCR court's findings will be upheld on appeal if there is "any evidence of probative value sufficient to support them." *Id.* "This Court will reverse the PCR court's decision when it is controlled by an error of law." *Sheppard v. State,* 357 S.C. 646, 651, 594 S.E.2d 462, 465 (2004).

516

### DISCUSSION

### I.

### A.

■ Petitioner first asserts the PCR judge erred in failing to find the presence of Juror Floyd Walling, with whom he had been incarcerated prior to trial, constituted a *per se* violation of his due process right to a fair and impartial jury.

During *voir dire*, the trial judge asked the members of the jury pool whether any member was "related by blood or marriage" to Petitioner or was a "close personal friend." Walling did not respond to this question. Before Walling was seated on the jury, his trial counsel had three remaining peremptory challenges.

While serving his sentence for the two counts of murder, Petitioner discovered that he and Juror Walling had been incarcerated together at the Colleton County Detention Center in 1997. Petitioner made the connection when his cellmate noticed that Floyd Walling, the cellmate's cousin, was listed as a juror on Petitioner's trial transcript. Petitioner remembered Walling after the cellmate told him that Walling was also known as "Rum Gully." At the PCR hearing, Petitioner testified he did not recognize Walling as the man he knew in prison because Walling had shaved his beard and was not wearing prison attire. Additionally, Petitioner was not aware of Walling's given name, but rather, knew him as "Rum Gully." Although he was unable to produce documentation, Petitioner claimed that he and Walling had altercations while in jail, which included incidents where Petitioner threw urine on Walling and struck him with a mop.

Petitioner presented Walling as a witness at the PCR hearing. Walling testified he was detained several times for failing to pay child support. While serving this time, Walling was assigned to laundry detail. In this capacity, Walling encountered Petitioner when he delivered clean clothing to him. Despite this interaction, Walling testified that he and Petitioner never spoke to one another. He further testified there was an incident where an inmate threw urine and feces on him, but he did not know who did it and did not suspect that Petitioner was responsible. Walling admitted that while

in jail he heard that Petitioner was "accused of murder, but that was yet to be proven." Walling stated that he did recognize Petitioner at the time of trial as the person who was being detained in the Colleton County Detention Center in 1997. Although he did not disclose this information to the trial judge, Walling claimed that had the judge inquired whether he knew Petitioner he would have answered affirmatively and "asked them to dismiss [him] off the jury."

In response to questioning by the PCR judge, Walling denied having any bias or prejudice against Petitioner. Walling, however, admitted he had told the other jurors that he had been incarcerated with Petitioner and that Petitioner "was accused of murder, but he's got to be proven before he's [convicted]."

Petitioner's trial counsel testified that had he known that Walling and Petitioner had been incarcerated together, he "would have probably used a peremptory strike."

In his order, the PCR judge found "Walling's testimony that he had no preexisting bias against the [Petitioner] to be highly credible." In light of the evidence presented at the hearing, the judge believed Walling "acted as a fair and impartial juror" and that Petitioner failed to show that Walling prejudiced the other jury members by informing them that the two had been incarcerated together. The judge reasoned that the jury was "clearly aware that [Petitioner] was incarcerated at the time of trial but had not been convicted of the crimes with which he was charged."

Based on the foregoing facts, Petitioner contends Juror Walling's presence on the jury was a *per se* violation of due process on the ground "the circumstances of their relationship created a 'presumption of bias.' "[1] Specifically, Petitioner asserts the information revealed by Walling to the other jury members "could have had no other effect than to fix the image

---

1. The State avers Petitioner's argument is procedurally barred on the ground that it should have been raised in a direct appeal. Petitioner, however, did not become aware of his prior relationship with Juror Walling until after his direct appeal had been ruled on and he was in the process of preparing his petition for post-conviction relief. Accordingly, Petitioner's claim for relief is appropriately based on "after-discovered evidence." *Clark v. State*, 315 S.C. 385, 387–88, 434 S.E.2d 266, 267 (1993).

of petitioner as an inmate, hence a criminal, in the jurors' minds."

"[A] criminal defendant has no right to a trial by any particular jury, but only a right to a trial by a competent and impartial jury." *Palacio v. State,* 333 S.C. 506, 517, 511 S.E.2d 62, 68 (1999). " '[I]n order to fully safeguard this protection, it is required that the jury render its verdict free from outside influences of whatever kind and nature.' " *State v. Bryant,* 354 S.C. 390, 395, 581 S.E.2d 157, 160 (2003) (quoting *State v. Cameron,* 311 S.C. 204, 207, 428 S.E.2d 10, 12 (Ct.App.1993)).

"To protect both parties' right to an impartial jury, the trial judge must ask potential jurors whether they are aware of any bias or prejudice against a party." *State v. Woods,* 345 S.C. 583, 587, 550 S.E.2d 282, 284 (2001). "When a juror conceals information inquired into during *voir dire,* a new trial is required only when the court finds the juror intentionally concealed the information, and that the information concealed would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges." *Id.* "Where a juror, without justification, fails to disclose a relationship, it may be inferred, nothing to the contrary appearing, that the juror is not impartial. On the other hand, where the failure to disclose is innocent, no such inference may be drawn." *Id.* at 586–87, 550 S.E.2d at 284.

"Determining whether a juror's failure to respond to a voir dire question amounts to intentional concealment is a 'fact intensive determination that must be made on a case-by-case basis.' " *State v. Guillebeaux,* 362 S.C. 270, 274, 607 S.E.2d 99, 101–02 (Ct.App.2004)(quoting *State v. Sparkman,* 358 S.C. 491, 496, 596 S.E.2d 375, 377 (2004)). "Intentional concealment occurs 'when the question presented to the jury on voir dire is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable.' " *Id.* "Concealment is considered unintentional where the voir dire question posed is ambiguous or incomprehensible to the average juror or where 'the subject of the inquiry is insignificant or so far

removed in time that the juror's failure to respond is reasonable under the circumstances.'" *Id.*

Applying the above-outlined principles to the facts of the instant case, we find the PCR judge properly denied Petitioner relief on this ground. Here, it was reasonable for Juror Walling to remain silent when asked during *voir dire* whether any member of the jury pool was "related by blood or marriage or a close personal friend of [Petitioner]." At the PCR hearing, Juror Walling testified that he and Petitioner were not close friends. Petitioner corroborated Walling's testimony when he acknowledged that he did not know Walling very well. Juror Walling also testified that he did not have any bias or prejudice against Petitioner, and he and the other members of the jury held the State to its burden of proof before finding Petitioner guilty of the two murder charges.

Based on Juror Walling's testimony at the hearing, we believe that Walling did not intentionally conceal the existence of his prior relationship with Petitioner. *See Guillebeaux,* 362 S.C. at 274–75, 607 S.E.2d at 101–02 (holding juror did not intentionally conceal existence of social relationship with the State's chief witness and, thus, trial judge did not abuse his discretion in denying defendant's motion for a new trial); *State v. Galbreath,* 359 S.C. 398, 403–04, 597 S.E.2d 845 847–48 (Ct.App.2004) (finding juror did not intentionally conceal that juror knew the victim's mother and that juror's brother-in-law rented land from someone in victim's extended family where juror accurately answered *voir dire* question posed and the alleged relationships did not amount to close personal friends or business associates with any of the witnesses); *see also Sparkman,* 358 S.C. at 496–97, 596 S.E.2d at 376–77 (concluding no intentional concealment where the judge asked on *voir dire* whether anyone had been the victim of a "serious crime" and seated juror did not immediately recall that he had been a victim of a crime forty years earlier and was not sure if the crime constituted a "serious" one).

Furthermore, because the disposition of this issue essentially involves a credibility determination as to whether Juror Walling intentionally concealed his prior relationship with Petitioner, we defer to the PCR judge's findings. The PCR judge specifically found Juror Walling's testimony to be "high-

ly credible." *Solomon v. State*, 313 S.C. 526, 529, 443 S.E.2d 540, 542 (1994) (stating the Court gives great deference to a PCR court's findings when matters of credibility are involved); *State v. Loftis*, 232 S.C. 35, 45, 100 S.E.2d 671, 675 (1957) (declining to interfere with trial judge's discretion in matter concerning jury because trial judge has the opportunity to consider credibility of jurors). Accordingly, we affirm the judge's holding that Petitioner did not suffer a *per se* violation of his due process right to a fair and impartial jury.

## B.

In the alternative, Petitioner asserts he should receive a new trial because trial counsel was ineffective for not requesting appropriate *voir dire* questions. Petitioner contends that had counsel asked the court to "inquire about social contacts beyond 'close, personal' friendships and business associations," Juror Walling would have come forward and counsel could have made a motion to remove him for cause or exercise a peremptory strike.

Without reiterating the above analysis, there is evidence to support the PCR judge's decision that Petitioner "failed to make the requisite showing of prejudice resulting from Counsel's alleged deficiency in regards to additional jury voir dire." Juror Walling testified that he and the other members of the jury held the State to its burden of proof before finding Petitioner guilty. Additionally, Juror Walling stated that "it was a while there before they could convince me that he's the one [that] done it." Given Juror Walling and the other members of the jury adhered to the requisite standard of proof before convicting Petitioner, we find any alleged error by trial counsel did not result in a violation of Petitioner's right to a fair and impartial jury. Thus, the PCR judge properly denied Petitioner relief on this ground.

## II.

Next, Petitioner argues the PCR judge erred in finding trial counsel was not ineffective for failing to object to certain portions of the solicitor's closing argument on due process grounds as well as Rule 22 of the South Carolina Rules of Criminal Procedure. Specifically, Petitioner con-

tends trial counsel was ineffective for not objecting to the solicitor's comments on constitutional due process grounds "rather than mere rule violations."

At trial, there was conflicting testimony as to whether Petitioner or his girlfriend, Darlene Winningham, shot Hattie Mae Yates and her infant daughter. In response to this testimony, the solicitor stated during his closing argument:

> I know that [Petitioner] was surprised when those children got there at 3:00 or 3:30, and that he sent them off. I know that he thought Hattie Mae Yates—
>
> * * *
>
> And, God only knows, I don't know what the motive for that is, and his Honor will charge you that the State is not required to prove a motive. I don't know whether they got mad with each other or what, but I know it happened. I know that the person on the porch didn't kill them.
>
> * * *
>
> You know, Hattie Mae Yates—there may come a time in life where your life doesn't mean much, and I can't tell you that Hattie's did, but I can tell you one thing. That little girl that was sitting in that car seat she ain't never done anything to anybody. Never in her life has she ever said a bad word. And I know she is dead, and she's dead at the hands of [Petitioner], and, for that, you need to convict him for murder.

To each of these comments, trial counsel interposed an objection and moved for a mistrial based on Rule 22 of the South Carolina Rules of Criminal Procedure.[2] The trial judge denied the motion for a mistrial. In reaching this decision, the judge did not believe "that there was such egregious abuse as would suggest that the Solicitor ha[d] invaded the jury's province of deciding whether or not the facts and inferences drawn therefrom would support a verdict."

At the PCR hearing, trial counsel explained that he objected on the basis of Rule 22 because he "didn't really see a huge

---

**2.** Rule 22 of the South Carolina Rules of Criminal Procedure provides, "In arguing before a jury, no attorney shall address or refer to by name or otherwise any member of the jury he is addressing, or otherwise make any personal appeal to any or all members of the jury." Rule 22, SCRCrimP.

difference between the constitutional rule and the criminal procedural rule. It's both preventative and both exist for the same reason in order to give him a fair trial. That's the reason for both rules." The PCR judge also apparently did not see a distinction between an objection based on Rule 22 and due process grounds. In denying Petitioner relief on this ground, the judge found that "Counsel cannot be said to have failed to make every reasonable effort to protect the [Petitioner's] right to a fair trial." The judge noted that counsel made "timely objections to the solicitor's comments where appropriate" and "moved for a mistrial on the ground that the solicitor's comments constituted a violation of professional ethics." The judge concluded that "given the overwhelming evidence of [Petitioner's] guilt of the crimes with which he was charged, the [Petitioner] has failed to make the requisite showing of prejudice resulting from any alleged deficiency."

Despite the PCR judge's failure to specifically rule on the distinction made by Petitioner in terms of a Rule 22 objection versus an objection based on constitutional due process grounds, we believe his ultimate decision that trial counsel was not ineffective was correct and is supported by the record.

As a threshold matter, trial counsel was not deficient in failing to specifically object on constitutional grounds. As we view Rule 22, we believe it was promulgated on the concepts of due process and fundamental fairness. Our research has not revealed any cases which analyze Rule 22. Therefore, Rule 22 is not considered distinctly different from an objection based on due process principles. Accordingly, we hold trial counsel's objection based on Rule 22 was sufficient to encompass any due process claims alleged by Petitioner.

Even assuming that trial counsel was deficient in not interposing a specific objection based on constitutional grounds, Petitioner was not prejudiced by his failure to do so. We find that any impropriety in the solicitor's closing argument was not sufficient to warrant the grant of a new trial.

A solicitor's closing argument must be carefully tailored so as not to appeal to the personal biases of the jury. *State v. Copeland,* 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996). The State's closing arguments must be confined to evidence in the record and the reasonable inferences that may

be drawn from the evidence. *Id.* "A solicitor has a right to state his version of the testimony and to comment on the weight to be given such testimony." *Randall v. State*, 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004). However, "[a] solicitor may not vouch for the credibility of a State's witness based on personal knowledge or other information outside the record." *Matthews v. State*, 350 S.C. 272, 276, 565 S.E.2d 766, 768 (2002).

 "On appeal, the appellate court will view the alleged impropriety of the solicitor's argument in the context of the entire record, including whether the trial judge's instructions adequately cured the improper argument and whether there is overwhelming evidence of the defendant's guilt." *Simmons v. State*, 331 S.C. 333, 338, 503 S.E.2d 164, 166 (1998). "Improper comments do not automatically require reversal if they are not prejudicial to the defendant, and the appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument." *Humphries v. State*, 351 S.C. 362, 373, 570 S.E.2d 160, 166 (2002). "The relevant question is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*; *see State v. Hornsby*, 326 S.C. 121, 129, 484 S.E.2d 869, 873 (1997) ("A denial of due process occurs when a defendant in a criminal trial is denied the fundamental fairness essential to the concept of justice."). Furthermore, a trial judge is allowed discretion in dealing with the range and propriety of closing argument to the jury, and rulings on such matters will not be disturbed absent an abuse of discretion. *State v. Patterson*, 324 S.C. 5, 17, 482 S.E.2d 760, 766 (1997).

In the instant case, the solicitor's comments were confined to facts established during trial and, in the context of the entire record, were not so egregious as to have "infected the trial with unfairness as to make the resulting conviction a denial of due process." *Von Dohlen v. State*, 360 S.C. 598, 609, 602 S.E.2d 738, 744 (2004), *cert. denied*, 544 U.S. 943, 125 S.Ct. 1645, 161 L.Ed.2d 511 (2005). Although the solicitor improperly used the pronoun "I" in his closing argument, these comments were limited and did not recur throughout his argument. Furthermore, there was also overwhelming evidence of Petitioner's guilt. *See State v. McFadden*, 318 S.C. 404, 416, 458 S.E.2d 61, 68 (Ct.App.1995) (holding the solici-

524

tor's comments did not infect the trial with unfairness to the extent that his conviction was a denial of due process where there was ample evidence of guilt in the record). Finally, the trial judge charged the jury that "[y]ou must not consider as evidence any statement of counsel made during the trial," and instructed the jury members regarding their duty to "pass upon the credibility or believability of the witnesses." These instructions were sufficient to cure any possible prejudice caused by the solicitor's comments. Therefore, we do not believe there was a reasonable, probability that the result of the trial would have been different had trial counsel objected on due process grounds.

### III.

Finally, Petitioner argues the PCR judge erred in failing to find that appellate counsel was ineffective for briefing the solicitor's closing argument issue as a due process violation rather than raising the Rule 22 procedural issue that was presented at trial.

In his brief to the Court of Appeals, Petitioner's appellate counsel argued "the [trial] court erred in violation of due process of law when it repeatedly permitted the solicitor to inject his personal opinion that appellant was guilty into a case where the key witness had given grossly inconsistent information about the case." In an opinion pursuant to Rule 220(b)(2), SCACR, the Court of Appeals affirmed Petitioner's convictions on error preservation grounds because the constitutional issue raised on appeal had not been raised at trial. *State v. James Smith*, Op. No. 2002–UP–320 (S.C. Ct.App. filed May 3, 2002).

In his order, the PCR judge found appellate counsel was not ineffective. In reaching this decision, the judge noted that appellate counsel had filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and thus, Petitioner's case had received full review by the Court of Appeals. Because appellate counsel filed a regular appeal and not an *Anders* brief on behalf of Petitioner, the PCR judge clearly erred in his findings. This error, however, does not warrant reversal given that Petitioner is unable to show that any alleged deficiency in appellate counsel's performance would have resulted in a different outcome on appeal.

A PCR applicant has the burden of proving appellate counsel's performance was deficient. *Anderson v. State,* 354 S.C. 431, 434, 581 S.E.2d 834, 835 (2003). "Although appellate counsel is required to provide effective assistance of counsel, 'appellate counsel is *not* required to raise every nonfrivolous issue that is presented by the record.'" *Tisdale v. State,* 357 S.C. 474, 476, 594 S.E.2d 166, 167 (2004), *cert. denied,* 543 U.S. 845, 125 S.Ct. 287, 160 L.Ed.2d 73 (2004) (quoting *Thrift v. State,* 302 S.C. 535, 539, 397 S.E.2d 523, 526 (1990)).

Because trial counsel objected to the solicitor's closing argument pursuant to Rule 22, appellate counsel was remiss in failing to brief the specific issue raised at trial. Petitioner, however, cannot establish that he was prejudiced by this deficiency. As previously discussed trial counsel's objection based on Rule 22 encompassed any possible due process claims of the Petitioner. Moreover, the impropriety of the solicitor's closing remarks did not rise to the level which would have deprived Petitioner of a fair trial. Therefore, while Petitioner has shown error, there is evidence to support the PCR judge's ruling that Petitioner was not entitled to relief on this ground.

Based on the foregoing reasons, the order of PCR judge denying Petitioner relief is

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.