**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Eric Wright, Appellant.

Appellate Case No. 2011-202547

———————————

Appeal From Beaufort County
Carmen T. Mullen, Circuit Court Judge

———————————

Unpublished Opinion No. 2014-UP-091
Heard November 6, 2013 – Filed March 5, 2014

———————————

**AFFIRMED**

———————————

Appellate Defender David Alexander, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General William M. Blitch, Jr., both of
Columbia, for Respondent.

———————————

**PER CURIAM:** Eric Wright was convicted of assault and battery with intent to
kill (ABWIK) and possession of a weapon during the commission of a violent
crime. He appeals, arguing the trial court erred in (1) failing to grant his motion
for mistrial based on the admission of hearsay testimony, (2) failing to grant his

*Batson*[1] motion, and (3) removing the foreperson from the jury without good cause. We affirm.

1.     We find no error in the trial court's denial of Wright's motion for mistrial based upon the admission of alleged hearsay testimony.  Wright complains about testimony from Alexus, an eyewitness to the incident, after the trial court made an *in limine* ruling excluding any hearsay testimony from a witness that "they call [the shooter] Bo," if the witness did not know the shooter.  In response to the solicitor's question whether Alexus knew the name of the shooter, she stated, "I don't know his real name, but I know they call him Bo."  Even if we were to assume this testimony constituted hearsay,[2] we find no reversible error.  Prior to her testimony that she did not know the shooter's real name but she knew "they call him Bo," Alexus had already testified, without objection, that "Bo got out of the car, and pointed a gun . . . . He pointed the gun at [Victim] and shot twice."  Wright argues Alexus' testimony "they call him Bo" was improper because it was hearsay testimony that identified him, Bo, as the shooter.  Because Alexus had already identified the shooter as "Bo," her later testimony "they call him Bo" could not have prejudiced Wright.  *See State v. Price*, 368 S.C. 494, 499, 629 S.E.2d 363, 366 (2006) (noting improper admission of hearsay evidence is reversible error only when the admission causes prejudice; the admission of improper hearsay evidence is harmless where the evidence is merely cumulative to other evidence).  At any rate, the trial court's explicit instruction to the jury to strike the question and strike Alexus' answer cured any possible error, and the prejudicial effect would have been minimal such that a mistrial would not have been warranted.  *See State v. Herring*, 387 S.C. 201, 216, 692 S.E.2d 490, 498 (2009) (noting a curative instruction to disregard the testimony is usually deemed to cure any alleged error); *State v. Dempsey*, 340 S.C. 565, 570, 532 S.E.2d 306, 309 (Ct. App. 2000) (holding "a mistrial should not be ordered in every case where incompetent evidence is received and later stricken from the record," and noting an instruction

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).
[2] We are not convinced this testimony was inadmissible hearsay.  The context in which Alexus testified, "I don't know his real name, but I know they call him Bo" is unclear.  Although the trial court initially agreed with defense counsel's characterization of such testimony as hearsay, it underpinned that ruling based on a foundation issue, i.e., whether the witness had an independent knowledge that the person was known as "Bo."  Here, how Alexus came to understand the shooter's name was "Bo" was never explored at trial.

to disregard incompetent evidence will usually be deemed to cure any error in its admission unless under the facts of the particular case "it is probable that, notwithstanding such instruction, the accused was prejudiced.").

2.      We find no merit to Wright's assertion that the trial court erred in denying his *Batson* motion.  Wright contends, though the State provided a gender-neutral reason on its face, the defense proved the reason was actually pretext.[3]  Here, the record supports the trial court's denial of Wright's *Batson* motion.  The State provided a gender-neutral explanation for using peremptory challenges on Jurors 173 and 46, elucidating that the two male jurors had charges, or "items," on their rap sheets, and this explanation was not fundamentally implausible.  While the solicitor agreed that a conviction was not necessary to trigger strikes, she specified her decision was based upon whether the potential juror "hit the radar for a criminal record."  Though Wright challenged the explanation as pretext based upon the State's acceptance of female Juror 119, the solicitor made clear that the absence of charges on a rap sheet would not trigger the criminal record she looked for in making her decision to strike a potential juror.  Because the rap sheet on Juror 119 included no charges or disposition of charges, the solicitor interpreted it as including nothing to show an arrest, and the juror therefore having no record. Thus, the State provided a meaningful distinction between female Juror 119 and male Jurors 173 and 46.  Giving the trial court's finding due deference and reviewing the trial court's ruling under a clearly erroneous standard, we find the record supports the trial court's finding of a gender-neutral explanation for the strikes and its denial of Wright's *Batson* motion.  *See State v. Edwards*, 384 S.C. 504, 509, 682 S.E.2d 820, 822-23 (2009) (noting, in determining whether a *Batson* violation has occurred, appellate courts give the trial court's findings great deference on appeal; the trial court's determination concerning whether purposeful discrimination has occurred rests largely on the court's evaluation of demeanor and credibility; the demeanor of the challenged attorney will often be the best and only evidence of discrimination, and an evaluation of the attorney's mind lies peculiarly within a trial court's province).

---

[3] While Wright's stated issue on appeal asserts error, in part, on the trial court's failure to grant his *Batson* motion after removal of the foreperson, Wright did not ask to renew his *Batson* motion following removal of the foreperson.  Accordingly, this argument is not preserved for our review.  *See State v. Freiburger*, 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (finding an argument advanced on appeal was not raised and ruled on below and therefore was not preserved for review).

Further, even if we were to accept Wright's argument, that the fact that Juror 119 had a rap sheet indicated she had a criminal record, the uneven application of a gender-neutral reason does not automatically result in a finding of invidious discrimination if the strike's proponent provides a gender-neutral explanation for the inconsistency. *State v. Cochran*, 369 S.C. 308, 334, 631 S.E.2d 294, 308 (Ct. App. 2006). *See also State v. Casey*, 325 S.C. 447, 454, 481 S.E.2d 169, 173 (Ct. App. 1997) (holding, although the State applied its facially valid reason inconsistently in permitting a like-situated female juror to be seated, the State's explanation of mistake for the omission was gender-neutral). The solicitor indicated she did not use a strike on Juror 119 because she did not believe her to have an arrest record. The solicitor's explanation was based upon her interpretation of Juror 119's purported rap sheet, i.e, that it showed no charges against the juror. Mindful that a determination as to whether a *Batson* violation has occurred must be based upon the totality of facts and circumstances in the record, as well that great deference is to be afforded the trial court's findings and that the appellate court's review of the trial court's ruling is under a clearly erroneous standard, we find the State provided a gender-neutral explanation for any inconsistency.

3.      Wright contends the trial court abused its discretion by removal and replacement of the foreperson without good cause, and over both his and the foreperson's objection. We disagree. "[A] criminal defendant has no right to a trial by any particular jury, but only a right to a trial by a competent and impartial jury." *Smith v. State*, 375 S.C. 507, 518, 654 S.E.2d 523, 529 (2007) (quoting *Palacio v. State*, 333 S.C. 506, 517, 511 S.E.2d 62, 68 (1999)). The trial court has a "duty to assure [itself] that every juror is unbiased, fair and impartial." *State v. Gulledge*, 277 S.C. 368, 370, 287 S.E.2d 488, 489 (1982). *See also State v. Powers*, 331 S.C. 37, 43, 501 S.E.2d 116, 118 (1998) ("It is the duty of the trial [court] to see that a jury of unbiased, fair and impartial persons is impaneled."). Further, "a trial [court] has the inherent power to maintain order and decorum in [its] courtroom." *State v. Beckham*, 334 S.C. 302, 314, 513 S.E.2d 606, 612 (1999). *See also State v. Shelton*, 270 S.C. 577, 580, 243 S.E.2d 455, 457 (1978) ("A trial judge has the inherent power to preserve order in his court and to see that justice is not obstructed by any person or persons. He has the authority to take such measures as appear reasonably necessary to secure orderly proceedings and to preserve the security of those participating in the trial or lawfully attending the proceedings."). Additionally, "[i]n a criminal prosecution, the conduct of the jurors should be free from all extraneous or improper influences." *State v. Kelly*, 331 S.C. 132, 141, 502 S.E.2d 99, 104 (1998); *State v. Hill*, 394 S.C. 312, 320, 714 S.E.2d 879, 883 (Ct. App. 2011). The determination of whether to dismiss a juror and replace him with

an alternate is within the sound discretion of the trial court, and such will not be disturbed on appeal absent an abuse of discretion. *State v. Carmack*, 388 S.C. 190, 198, 694 S.E.2d 224, 228 (Ct. App. 2010). *See also State v. Lindsey*, 372 S.C. 185, 194, 642 S.E.2d 557, 562 (2007) (finding no abuse of discretion in the denial of the appellant's motion to remove a juror and replace the juror with an alternate, noting it is within the trial court's discretion whether to dismiss a juror and substitute with an alternate juror); *State v. Simmons*, 360 S.C. 33, 43, 599 S.E.2d 448, 452 (2004) (holding the trial court acted within its discretion in excusing a juror for the juror's unauthorized communication with his wife).

We hold the trial court acted within its discretion in removing the foreperson from the jury. The trial court placed on the record valid reasons for its concern with the foreperson continuing to serve. The court noted it had been informed the foreperson was "cursing in the middle of the hallway" and "acting so badly" the situation required the intervention of two officers, and the deputy had to engage the head of security to have a discussion with the foreperson. The court noted it was particularly concerned with the foreperson's cussing, and was concerned with the effect his conduct may have on the other jurors given his position as foreperson. Further, while the foreperson denied he had exhibited such behavior in the jury room around the other jurors, he did not deny he had been cursing in the hallway about running late and he admitted he was frustrated. Additionally, the foreperson's self-proclaimed suitability to remain on the jury is not dispositive. *See id.* at 43 n.4, 599 S.E.2d at 452 n.4 (noting, in a case involving removal of a juror that did not involve removal for concealing information during *voir dire*, the juror's self-proclaimed impartiality was not dispositive). Based on the record before us, and recognizing the trial court was in the best position to observe the character and demeanor of the foreperson and evaluate the situation, we find no abuse of discretion in the court's dismissal of the foreperson and replacement with an alternate. *See State v. Thompson*, 278 S.C. 1, 9, 292 S.E.2d 581, 586 (1982), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315, (1991) ("Because we do not have the benefit of observing first hand the character and demeanor of the jurors as did the trial judge, we rely on his wisdom and judgment unless the record firmly establishes an abuse of discretion.").

**AFFIRMED.**

**HUFF, GEATHERS, and LOCKEMY, JJ., concur.**